TAYLOR & CO. v. LITTLE ROCK, MISSISSIPPI RIVER AND TEXAS RAILROAD COMPANY.

1. COMMON CARRIERS: *Contracting against their own negligence, or liabilities as insurers.*

Common carriers may contract against liabilities for losses, etc., occurring from unavoidable accident, either upon their own or a connecting line. They may also contract against their common-law liability as insurers of the goods carried by them; but it is against public policy to permit them to contract for exemption from liability for losses and damages to goods happening from their own or their servants' negligence.

Taylor & Co. v. Little Rock, Mississippi River and Texas Railroad Co.

2. SAME: *Insurers.*

At common law, a common carrier is an insurer of the goods which he undertakes to carry; and a contract of exemption from liability as insurer, for loss by fire, etc., must, like other contracts, be founded upon some consideration.

APPEAL from *Jefferson* Circuit Court.

Hon. X. J. PINDALL, Circuit Judge.

*McCain & Crawford*, for appellants:

1. Common carriers were insurers, etc., except against the act of God and the public enemy, by the common law, and no restrictions by contract were allowed. (*Gould v. Hill, 2 Hill, 623; Lawson on Carriers, sec. 24, et seq.*) But in modern days such restrictions have been relaxed as to liability, in consideration of reduced rates, etc., over its own lines, and where connecting lines are used, over such. In the latter case, there are authorities that carriers may make restrictions that would inure to the benefit of connecting lines, where a through rate is guaranteed, but such is not this case. The receiving carrier did not *guarantee a through rate, nor undertake through transportation*, and appellee was at liberty to charge its customary rates, and no exemptions inured to its benefit. *Hutchinson on Carriers*, secs. 271-2-3-8; *Chambler v. McKenzie, 31 Ark., 162; Story on Contracts, sec. 450; 1 Parsons on Cont., 389; Babcock v. L. S. & M. S. R. Co., 49 N. Y., 491-7; Manhattan Oil Co. v. C. & A. R. R. & T. Co., 54 N. Y., 197; Ætna Ins. Co. v. Wheeler et al., 49 N. Y., 617; Camden & Amboy R. R. v. Forsythe, 61 Penn., 81.*

*M. L. Bell* and *L. A. Pindall*, for appellee:

The clear intention of the contract was to give all the carriers under the bill of lading all the exceptions reserved.

See our brief in *L. R., M. R. & T. R. Co. v. Talbot & Co.*, now pending here.

The case of *Babcock, etc., v. L. S. & M. S. R. Co., 49 N. Y., 491*, does not sustain the position of appellants' counsel. There the contract was only to deliver at *Corry*, the terminus of their line, etc. "Carriers not named in a contract for the carriage of goods, and who are not formal parties to it, may, under certain circumstances, have the benefit of it. Such is the case where the contract is made by one of several carriers on connecting lines on rates for the carriage of property over several routes for an agreed price, by authority express or *implied* of all the carriers. So, too, in the absence of any authority in advance, or any usage by which an authority may be inferred, a contract made by one carrier for the transportation of goods over his and connecting lines, adopted and acted upon by the other carriers, *will inure to the benefit of all*, thus ratifying it and performing service under it." *Ib., p. 497*, quoting *45 N. Y., 514, and 46 N. Y., 272.*

The bill of lading expressly provides for *through transportation*, and guarantees the rate a large part of the way; defendant company took the goods under that contract, performed services under it, and is entitled to the benefit of all exceptions.

ENGLISH, C. J. This action was brought in the Circuit Court of Jefferson County, by E. L. Taylor & Co., merchants of Pine Bluff, against the Little Rock, Mississippi River and Texas Railway, for the value of fifty-one boxes of tobacco.

The substance of the complaint was, that plaintiffs, on the twentieth of June, 1880, caused to be delivered to the defendant corporation, as a common carrier of goods, etc., at Arkansas City, fifty-one boxes of tobacco, more particu-

larly set out in a bill of particulars attached, of the value of $342.85, the property of plaintiffs, and the defendant then and there accepted and received said fifty-one boxes of tobacco of and from plaintiffs' authorized agents, to be safely and securely taken care of, and carried from Arkansas City to Pine Bluff, and there delivered to plaintiffs, for a certain reasonable reward and compensation, to be paid to defendants; and defendant, in consideration thereof, undertook and promised to take care of said goods, and securely carry and deliver the same to plaintiffs at Pine Bluff; and although the defendant had and received said goods as aforesaid, yet defendant, not regarding its duty in that behalf, did nor would safely and securely keep and carry said goods; but, on the contrary, defendant, its agents and servants so carelessly and negligently behaved and conducted themselves in the premises, that said goods were, on the day and year last aforesaid, at Arkansas City, wholly destroyed and lost to the plaintiffs, wherefore they pray judgment for $400 damages, etc.

The bill of particulars, attached to the complaint, follows:

" 20 boxes Air Line Twist tobacco, 500 ℔s., 44c....$220 00
  30 half-caddies Tit Bit tobacco, 310 ℔s., 36c..... 111 60
  1 box Piedmont Beauty tobacco, 25 ℔s., 45c..... 11 25

Total................................................$342 85."

The defendant answered in two Code paragraphs. The first paragraph related to the first item in the bill of particulars, "twenty boxes Air Line Twist tobacco, 500 pounds, forty-four cents per pound, $220," for the value of which, and interest, the plaintiffs obtained judgment, which, it seems, has been settled, and is not involved in this appeal.

The second paragraph of the answer related to the remaining items in the bill of particulars, as to which the

verdict and judgment were for defendant, and is, in substance as follows:

"And as to said balance of said freight, being thirty-one boxes or packages, this defendant made no contract of shipment with plaintiffs, nor did it receive the said goods from the plaintiffs in any manner for any purpose; but the said goods were shipped from Lynchburg, Virginia, under a contract with the Atlantic, Mississippi and Ohio Railroad Company, to ship the same to plaintiff at Pine Bluff, Arkansas, for a stipulated rate of freight through, and received by the defendant, without any contract whatever with said shipping company from steamer Vicksburg, and were stored in the depot, the wharf-boat R. E. Lee, at Arkansas City, and accidentally burned by fire, and totally lost, without fault or negligence by this defendant, but by unavoidable accident; and this defendant only received the same to transport, as a connecting line, from said Arkansas City to Pine Bluff, Arkansas, under the shipping contract made with plaintiffs by said shipping company, in which contract of shipment it was expressly provided and stipulated, that said company should not be liable for loss or damage by fire while in depot; and said defendant says it was its universal custom, and known to plaintiff, that in shipping goods over its own line, to except all liability for loss or damage occurring by fire; and it received said goods under the terms of said shipping contract, and no other, and denies that it is liable for said loss. Said contract and bill of lading is filed herewith as *exhibit B*, as part of this answer. Defendant admits the value of said goods to be correctly stated."

On the trial the court permitted defendant, against the objection of plaintiffs, to read in evidence the following bill of lading, made exhibit B to second paragraph of answer:

" *Charles L. Perkins and Henry Fink, Receivers, No. 65, Atlantic, Mississippi and Ohio Railroad Company:*

"Received by the Atlantic, Mississippi and Ohio Railroad Company, from Smyth & Co., the following described packages in good apparent order (contents and value unknown), consigned as marked in the margin, to be transported over the line of their road to Bristol, and delivered in like good order, loss or damage by fire while in depot, breakage of glass, leakage of liquors and losses occurring from the perishable nature or inherent defects of property EXCEPTED, to the consignee or owner at said station, or to such company or carrier (if the same are to be forwarded beyond said station), whose line may be considered a part of the route to the place of destination of said goods or packages. It being distinctly understood that the responsibility of this company, as a common carrier, shall cease at the station when delivered to such owner, consignee or carrier. But it guarantees that the rate of freight for the transportation of said packages, from the place of shipment to Memphis, shall not exceed sixty-five cents per one hundred pounds, and legal charges advanced by this company. Dated at Lynchburg, Va., June 8, 1880. This receipt is subject to the rules and conditions of the printed local tariff of this company.

| Marks and Consignments. | Articles. | Weights subject to correction. |
| --- | --- | --- |
| E. L. Taylor & Co. Pine Bluff, Ark., via Memphis, account Anchor Line. Marked C. | 1 Box<br>30 Caddies Tobacco | 450 |

"T. D. JULBS, *Agent.*"

The plaintiff's counsel admitted that the goods in controversy were shipped in Virginia under said bill of lading,

but objected to the reading of it in evidence, because the defendant was not privy thereto, and could not claim the benefit of any exception or defense set out therein; but the court overruled the objection, and permitted the bill of lading to be read in evidence, and plaintiffs excepted, etc.

Plaintiff's counsel then admitted that the goods in controversy were burned on a wharf-boat, which defendant was using as a depot at Arkansas City, after being received for transportation from the steamboat on the Mississippi River. The defendant then introduced two witnesses, who testified that the fire in the wharf-boat broke out accidentally on the nineteenth of June, 1880, and burned the boat and goods in controversy, and that defendant had good and careful men in charge of the boat at the time of the fire, who were exercising all diligence, and were careful in keeping the boat.

Defendant admitted the value of the goods as stated in the bill of particulars, and the above was all the evidence in the case.

As to the goods in the bill of lading, marked exhibit B, read in evidence, the court, of its own motion, charged the jury :

" 1.   In this case the plaintiffs are entitled to recover the value of the goods, unless the jury find that they were destroyed by fire at the depot, without any negligence of the defendant or its agents.

" 2.   The burden of proof is on the defendant to show they were destroyed by fire at the depot, under circumstances that satisfy the minds of the jury that it was without negligence on the part of the defendant or its agents; or, in other words, that the goods were destroyed by fire whilst the defendant was using ordinary care in keeping them."

Defendant then asked, and the court gave the following instruction :

" The railroad company was only required to take such ordinary care and diligence to protect the goods, as is customary amongst prudent business men under like circumstances."

Plaintiff then asked the court to give the jury the following instructions :

" 1. Ordinary care, as applied to common carriers, means such care as a reasonably prudent man takes of his own goods.

" 2. If the fire in the wharf-boat broke out through the negligence of any of the servants or employés of defendant, this is considered the negligence of the defendant.

" 3. A common carrier can not, by contract, restrict its common-law liabilities as an insurer of goods shipped over its line. [Refused.]

" 4. Where there are several independent carriers forming a continuous line of transportation, any stipulation made by the first carrier, exempting all carriers of the line from their common-law liability, for the destruction of goods by fire, will not inure to the benefit of the last carrier, when the first carrier does not guarantee a through rate of freight, and where it excludes itself from any liability whatever, not occurring on its own line." [Refused.]

The court gave the first and second of these instructions, and refused the third and fourth, and plaintiff excepted, etc.

The court instructed the jury that, under the pleadings and admission of the parties, they would find in favor of plaintiffs for the value of the twenty boxes of tobacco, embraced in a bill of lading read in evidence, but not above copied, covering the first items in the bill of particulars ; and the jury so found ; but found in favor of defendant as

to the remaining items in the bill of particulars, covered by the bill of lading above copied.

Plaintiffs moved for a new trial on the grounds:

1. That the court erred in refusing to exclude the bill of lading marked exhibit B.

2. In giving of its own motion the first two instructions, etc.

3. In refusing to give the third and fourth instructions asked for plaintiffs.

The court overruled the motion, and defendant took a bill of exceptions, etc.

Judgment was rendered in favor of plaintiffs for the value of the twenty boxes of tobacco, and interest, as found by the jury, and they appealed.

1. COMMON CARRIER: Covenanting against negligence. Whilst common carriers may contract against liability for losses, etc., occurring from unavoidable accidents, it is against public policy to permit them to contract for exemption from liability from losses and damages happening from the negligence of themselves or their servants. *Taylor, Cleveland & Co. v. Little Rock, Mississippi River and Texas R. R. Co., 32 Ark., 398,* and authorities cited.

The court below did not err in refusing the *third* instruction moved for appellants.

So it is settled that a railroad corporation, in giving a bill of lading for the transportation of goods over its own line, and other connecting lines of railways, or other public means of carriage, may contract against liability for loss of, or damage to goods happening beyond the termination of its own line, by unavoidable accidents. *Ib.*

The court below in admitting the bill of lading, and in refusing the *fourth* instruction moved for appellants, decided in effect that the clause in the bill of lading exempting the Atlantic, Mississippi and Ohio Railroad Company from liability for loss of the goods by fire while in depot, inured to the benefit of the appellee company.

The bill of lading was evidently made out by filling blanks in a printed form. It is to be inferred from its face that it was the purpose of Smyth & Co., the consignors, to send the tobacco from Lynchburg, Virginia, to Bristol, by the railway of the company that gave the bill of lading, thence by connecting lines of railways to Memphis, thence by the Anchor line of steamboats to Arkansas City, and thence by the railway of appellee to the appellants, the consignees, at Pine Bluff. There is no contract expressed in the bill of lading that appellee, or any intermediate carrier, should be exempt from common-law liability for loss of the goods by fire. The company that gave the bill of lading agreed to carry the goods from Lynchburg to Bristol, and deliver them, it may be assumed, to a carrier of a connecting line, and contracted for its own exemption from liability for loss or damage to the goods by fire while in depot. Beyond this it expressed no contract, except to guarantee that the rate of freight for the transportation of the goods from Lynchburg to *Memphis* should not exceed 65 cents per 100 pounds. There was no proof of any agreement between the shipping company and the owners of connecting lines for the transportation of goods on some common terms. We have nothing to guide us but the expressions in the bill of lading.

By the common law a common carrier is an insurer of goods which he undertakes to carry, except from loss by act of God or the public enemy. A contract to be exempt from responsibility from loss by fire, or other accident, like other contracts, must be upon some consideration. The consideration to the carrier is the exemption from responsibility, and the consideration to the owner of the goods is usually a reduced rate of freight. *Hutchinson on Carriers, sec. 278.*

In this case there was no agreement in the bill of lading for a rate of freight beyond *Memphis*. The appellee was

2. SAME:
Insurers.

at liberty to charge a reasonable, customary rate for the transportation of the goods, in the absence of a showing to the contrary. The bill of lading fixed no rate for appellee. There is, therefore, an absence of any showing of any consideration to the owners of the goods for an implied contract on their part to exempt appellee from its common-law liability for loss of the goods by fire.

Had the company which gave the bill of lading expressed in it a rate of freight to be charged by all the connecting lines to Pine Bluff, the destination of the goods, there would have been ground to hold, upon adjudicated cases, that its contract for exemption from liability for loss by fire inured to the benefit of the owners of all the connecting lines on the whole route, including appellee. *Hutchinson on Carriers, secs. 270–278*, and cases cited; *Maghee v. Camden and Amboy R. R. Co., 45 New York, 514; Lamb et al. v. Camden and Amboy R. R. and T. Co., 46 ib., 272; Babcock v. L. S. and M. S. Railway Co., 49 ib., 494; Camden and Amboy Railroad Co. v. Forsyth Bros., 61 Penn. State, 81; Jurson v. Camden and Amboy Railroad and T. Co., 4 American Law Register, 234.*

Reversed and remanded for a new trial.