Little Rock, Mississippi River and Texas Railway Co. v. J. H. Talbot & Co.

LITTLE ROCK, MISSISSIPPI RIVER AND TEXAS RAILWAY COMPANY v. J. H. TALBOT & CO.

1. BILL OF LADING: *Construction: Exemption from liability: Doubts, how resolved.*

If the contract of a railroad company, as expressed in its bill of lading for shipping goods, leaves it in doubt whether the company was exempted from liability for loss happening by fire, the doubt must be resolved against the company.

2. COMMON CARRIERS: *Contracting for exemption from liability.*

Common carriers may contract for exemption from liability for injuries occurring from unavoidable accidents, but it is against public policy to allow them to contract against liabilities occurring from the negligence of themselves or their servants.

3. SAME: *Same: Burden of proof as to negligence.*

When, by contract, a common carrier is exempted from liability for loss occurring by fire, the owner of the goods lost in transit by fire, must affirmatively prove that the loss was the result of negligence of the carrier or his agents before he can recover for it.

APPEAL from *Jefferson* Circuit Court.

Hon. X. J. PINDALL, Circuit Judge.

The following is the bill of lading referred to in the opinion of the court:

"*Richmond and Danville Railroad Company, Through Line.*

" Received of Seddon & Bruce, in outward apparent good order, inward condition of contents unknown, and for which, viz., the condition of contents, this company or any of its connections shall not be responsible, 13 packages, 26 buckets, value unknown, to be transported by the Richmond and Danville Railroad Company to Pine Bluff, Ark., 13 packages, 26 buckets of manufactured tobacco, 63 lbs. gross, marked J. H. T. & Co., Pine Bluff, Ark., via Mem-

phis, Tenn., care of Anchor Line. Rates guaranteed from —— to Memphis, at —— cents per 100 lbs. Supposed to be marked and numbered as per margin, to be transported as above specified, and delivered to the agents of the connecting railroad company or steamer, and in like manner to be delivered to each connecting railroad company or steamer until said goods or merchandise shall have reached the point first named in this receipt. As the packages aforesaid must pass through the hands of several carriers, it is understood as a part of the consideration on which said packages are received, that the exceptions from liability made by such carriers, respectively, shall operate in the carriage by them, respectively, of said packages as though inserted at length; and specially that neither said carriers or either of them shall be liable for leakage of any kind of liquids, nor for losses by the bursting of casks or barrels of liquids arising from expansion and unavoidable causes; breakage of any kind of glass or carboys of acids, or articles packed in glass; stoves or stove furniture, castings, machinery, carriages, furniture, musical instruments of any kind, packages of eggs; or for loss or damage on hay, hemp, cotton; or the evaporation or leakage of alcohol, or leakage of oil of any description; or for damages to perishable property of any kind; or change of weather, or for loss or damage on the sea or river. And it is especially understood that, for all loss or damages occurring in transit, the legal remedy shall be against the particular carrier in whose custody the said packages may be at the time of the happening thereof, it being understood that the Richmond and Danville Railroad Company, in receiving said packages to be forwarded as aforesaid, assumes no other responsibility for their safety or safe carriage than may be incurred on its own road, and is expressly confined to the roads and stations of the Richmond and Danville Railroad

Little Rock, Mississippi River and Texas Railway Co. v. J. H. Talbot & Co.

Company. All goods carried by the company on charges at actual gross weight, excepting such goods as are provided for in the general tariff—gunpowder and friction matches not received—and in case of loss or damage of any of the goods named in this bill of lading, for which the Richmond and Danville Railroad, or connecting railroad companies, or the railroad, steamboats or forwarding lines with which they connect, may be liable for, it is agreed and understood that they shall have the benefit of any insurance effected by or for account of the owner of said goods. No liability is assumed by said company for the wrong carriage or wrong delivery of goods that are marked with initials, numbered, or imperfectly marked.

" It is further understood and agreed between the parties hereto, that the railroad company above mentioned, or any connecting railroad company, shall not be liable for any damage by fire or collisions on the rivers or sea, or for loss or damages by storms or accidents on water, as the Richmond and Danville and connecting railroads assume no marine risks whatever. All goods or property shipped on this receipt will be subject to necessary cooperage, and will be delivered at the depots of the companies. It being also agreed between the parties hereto that the companies above mentioned, and the railroads or steamboats with which they connect, shall not be held accountable for any deficiency in the contents of packages if receipted for by consignees at point of delivery in good order.

"In witness whereof, the agent hath affirmed to —— bills of lading, all of this tenor and date, one of which being accomplished the other to stand void.

" J. C. AGIL, *Agent.*"

*M. L. Bell* and *L. A. Pindall,* for appellants:

1. The instruction of the court to the effect that the exception in the bill of lading did not inure to the benefit

of the appellant, the last carrier, ·was erroneous; it was merely a question of construction, and appellant having accepted the freight and transported under the original contract of shipment, was clearly entitled to all the benefits of the contract.

2.   A carrier can make exceptions to a certain class of liabilities.   *Taylor, Cleveland & Co. v. R. R., 32 Ark., 393,* and the burden of proof is on the plaintiff, where the loss occurs within the excepted clause.   *R. R. Co. v. Reeves, 10 Wall., 176; Transportation Co. v. Doronen, 11 Wall., 129; Redfield on Railways, p. 110, par. 11 and 12.*

ENGLISH, C. J.   John H. Talbot and John M. McCain, doing business under the firm name of John H. Talbot & Co., at Pine Bluff, brought this action in the Circuit Court of Jefferson county, against the Little Rock, Mississippi River and Texas Railway Company, for the value of ninety-six sacks of corn, fifty-three sacks of oats, ten barrels of sugar, and thirteen packages, twenty-six buckets of manufactured tobacco, six hundred and thirty-seven pounds, all alleged to be of the value of $692.25.

The substance of the complaint was that the defendant received the goods, under· three bills of lading which are set out, at Arkansas City, for transportation to the plaintiffs at Pine Bluff, and that the goods were lost by the negligence of the defendant.

The substance of the answer was that, in the bills of lading attached to the complaint, defendant was exempted from liability for the loss of the goods by fire, and that the goods were destroyed by fire by the burning of the wharf-boat R. E. Lee, its receiving depot, at Arkansas City, by unavoidable accident, and without fault or negligence of defendant.

The value of the whole of the goods, as stated in the complaint, was not controverted.

On the trial, the plaintiffs introduced the three bills of lading attached to the complaint, without objection.

The first, marked A, covered the ninety-six sacks of corn and fifty-three sacks of oats. It was a through bill of lading from St. Louis to Pine Bluff, dated the thirteenth of June, 1880, signed by an agent of the defendant company, and clearly contained an exemption of the company from liability for loss of the goods by fire.

The second bill of lading, marked B, covered the ten barrels of sugar, was a through bill of lading from New Orleans to Pine Bluff, dated the seventeenth of June, 1880, given by an agent of defendant, and also contained a clause of exemption from liability for loss of the goods by fire.

The third bill of lading, marked C, covered the tobacco; was given at Richmond, Virginia, June 3, 1880, by the Richmond and Danville Railroad Company, and will be copied at length by the Reporter. It contained a clause which defendant insisted exempted it from liability for loss of the goods by fire, but the court ruled otherwise.

It was admitted that the value of the tobacco covered by this bill of lading was $267.22.

Plaintiffs introduced no further evidence.

E. W. Outlaw, witness for defendant, testified that all the goods named in the three bills of lading were received by defendant at Arkansas City, the terminus of defendant's railroad, on Saturday night, the nineteenth of June, 1880, on the wharf-boat R. E. Lee, which was the receiving depot of the road. That on Sunday morning, about six o'clock, the wharf-boat and contents were all burned, including the goods sued for. That the fire was accidental; and after careful investigation made by himself, who was the freight agent of the defendant, he could not ascertain

Little Rock, Mississippi River and Texas Railway Co. v. J. H. Talbot & Co.

the cause of the fire. It appeared to have broken out near the lamp room. Stanly Ryland, the clerk of the wharf-boat, had his office and bed room on the wharf-boat, and slept there. The boat was fully manned with mate and watchmen, both night and day. It was moored about a quarter of a mile below the office of witness, where the bank was better and nearer the railroad track. At the time of the fire, Ryland, the clerk, was up at his breakfast, The day watchman was at the boat, having relieved the night watchman.

On cross-examination the witness said Mr. Star, the mate of the boat, was up in town when the fire occurred, and was not drunk; is now in Memphis, having been discharged, the company having no further use for his services after the boat was burned. He was a boatman by profession. The two watchmen are still in the employ of the company. The investigation showed the day watchman was on the stage-plank when the fire broke out. He was there, because he saved the books and papers out of the office. The boat cost the company $6,500 at Memphis, and $7,500 to tow her down. She was insured for $6,000. The defendant had been recently offered $10,000 for her. The freight was received on Saturday night, from the steamers Vicksburg and Commonwealth, and was burned on Sunday morning.

This was all the evidence.

The jury, under instructions of the court, found a verdict in favor of plaintiffs for $692.25 damages, being the value of all the goods embraced in the three bills of lading.

Defendant was refused a new trial, took a bill of exceptions, and appealed.

1. BILL OF LADING: Construction. Exemption from liability. I. The court, of its own motion, instructed the jury (third instruction) that, as to the tobacco in the Virginia bill of lading, the plaintiffs were entitled to recover for its value.

Little Rock, Mississippi River and Texas Railway Co. v. J. H. Talbot & Co.

In so charging the jury the court decided as matter of law that the bills of lading did not exempt defendant from its common-law liability as a common carrier for the value of goods destroyed by fire, which charge was excepted to, and the giving of it made ground of the motion for a new trial.

The clause in the Virginia bill of lading relied on by defendant as exempting it for responsibility for loss occasioned by fire follows: "It is further understood and agreed between the parties hereto that the railroad above mentioned, or any connecting railroad company, shall not be liable for any damages by fire or collision on the rivers and sea, or for loss or damage by storm or accident on water, as the Richmond and Danville and connecting railroads assume no marine risks whatever."

Looking at the whole bill of lading we concur in the opinion of his Honor, the Circuit Judge, that the clause quoted applies to loss by fire occurring on water, and not on the railways or in their depots. But if the proper construction of the clause be in doubt, the doubt must be resolved against defendant, because the burden was on it to show that it had clearly contracted for exemption from responsibility for loss happening by fire. *Hutchinson on Carriers*, section 274. <span style="float:right">Doubts, how resolved.</span>

· II. The court, on its own motion, as to the goods embraced in the St. Louis and New Orleans bills of lading, instructed the jury: <span style="float:right">2. COMMON CARRIERS: Contract ing against liability.</span>

"1. That plaintiffs were entitled to recover the value of the goods unless the jury find that they were destroyed by fire without negligence of the defendant or its agents.

"2. The burden of proof is on the defendant to show they were destroyed by fire under circumstances that satisfy the minds of the jury that it was without negligence on the part of defendant or its agents—or, in other words, that

34

the goods were destroyed by fire whilst the defendant was using ordinary care in keeping them."

The first of these instructions is in harmony with the law that whilst common carriers may contract against liability for losses, etc., occurring from unavoidable accidents, as by fire, it is against public policy to permit them to contract for exemption from liability for losses and damages happening from the negligence of themselves or their servants. *Taylor & Co. v. Little Rock, Mississippi River and Texas Railway Company, ante, p. 148.*

3. SAME: Burden of proof of negligence. As to the second instruction, inasmuch as the St. Louis and New Orleans bills of lading introduced by plaintiffs exempted defendant from liability for loss of the goods by fire, it was sufficient for defendant to prove that the goods were destroyed by fire, and then the burden was upon plaintiff to prove that the loss resulted from the negligence of defendant or its agents. *Transportation Company v. Downer, 11 Wallace, 133; Clark et. al. v. Barnwell et al., 12 Howard, U. S., 272.*

It was error in the court to give the instruction as framed.

III. Defendant moved three instructions, the first of which the court gave, and refused the other two.

The second assumed that by the Virginia bill of lading defendant was exempted from liability for loss of the tobacco by fire, if it happened without negligence on its part, and the instruction was properly refused, because the bill of lading did not contain such exemption.

The third was:

"Under the bills of lading exhibited with plaintiffs' complaint the railroad was not liable for loss by fire, and if the goods were burned accidentally the jury must find for defendant, unless the plaintiffs prove that the fire was caused by the negligence of defendant or its agents."

This instruction was properly refused, because it applied to all three of the bills of lading. Had it been confined to the St. Louis and New Orleans bills of lading it should have been given.

For the error of the court above indicated, as to the burden of proof of negligence, the judgment must be reversed, and the cause remanded for a new trial.