ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

v. PITCOCK.

Opinion delivered April 8, 1907.

CARRIER—PASS EXEMPTING FROM LIABILITY—INVALIDITY.—A railroad company is liable to a passenger injured through its negligence, though at the time of his injury he was riding on a free pass which stipulated that he "assumed all risks of accidents and damages without claim upon the company;" such stipulation being contrary to public policy.

Appeal from Franklin Circuit Court; *Jeptha H. Evans,* Judge; affirmed.

*Oscar L. Miles,* for appellant.

The clause printed on the ticket that "the person or persons accepting this pass assumes all risks of accidents and damages without claim upon the company" presents the only question for decision in this case. Appellee was charged with notice of this condition. He had the option to pay for his transportation and have appellant to insure his safe carriage to his destination, or to accept the benefit of free carriage and himself assume the liability. Having accepted free passage, appellant was not as to him a carrier for hire. He is not entitled to recover. 192 U. S. 441, 24 Sup. Ct. Rep. 515.

*Sam R. Chew,* for appellee.

1. If a person is on a carrier's car by permission or invitation, even though riding on a free pass, he is a passenger, and the carrier owes to him the same duty, and the same degree of care in providing for his safety, that it owes to a passenger who has paid full fare. 3 Thompson on Neg. § 2646 *et seq;* 40 Ark. 298; 66 Ark. 494; 51 Ark. 459; 60 Ark. 550; 59 Ark. 180.

2. Appellant was liable for its negligence, notwithstanding appellee was a gratuitous passenger. The condition upon which appellant relies cannot be construed to mean an assumption by appellee of the risk of *negligence* on the part of appellant. Negligence and accident are not synonymous. 38 Ark. 357; Anderson's Law Dict. "Accident;" Webster's Dict. *id.* From the standpoint of public policy, those authorities have the better reason which hold that a carrier of passengers cannot ex-

empt itself, by stipulations and conditions, from liability for injuries resulting from its negligence, even though the passenger is traveling on a free pass. 20 Minn. 125; 18 Am. Rep. 360; 32 Mo. App. 228; 3 Pa. 290; 68 Mo. 340; 65 Mo. 569; 63 Mo. 314; 41 Ala. 486; 63 Miss. 302; 38 So. 502; 85 Ill. 80; 21 Ind. 48; 126 Ind. 126; 39 Ark. 148; *id.* 523; 48 Ark. 468.

Wood, J.  The conceded facts are that appellee was riding upon appellant's passenger train from Little Rock to Alma, Arkansas; that while so riding he was injured through the negligence of appellant, and that the amount of the damages as found by the jury was not excessive.  Appellee did not pay any fare for transportation, but accepted from appellant a free pass, which was indorsed as follows: "The person or persons accepting this pass assumes all risk of accidents and damages without claim upon company."  He accepted transportation on this pass, with full knowledge of the above indorsement, preferring to use the pass rather than to purchase a ticket which contained no limitations upon appellant's liability.

Appellant contends that it is not liable, because appellee accepted a pass which provided that "the person or persons accepting this pass assumes all risk of accidents and damages without claim upon the company."  We are of the opinion that this provision was intended by appellant to exempt it from liability for accidents caused by negligence of the company's agents.  For unavoidable accidents it would not be liable any way, and the case is the same in legal effect as if the clause had contained the words "whether caused by negligence of the company's agents or otherwise."  We do not agree with counsel for appellee that the cases of *Northern Pacific Ry. Co.* v. *Adams,* 192 U. S. 44, and *Boering* v. *Chesapeake Beach Ry. Co.,* 24 Sup. Ct. Reporter, 515, have no application because of the difference of the wording of the exempting clauses in the pass in those cases and the one at bar.  The clauses are in legal effect the same, and the cases are directly in point.  The only question for us to determine is whether or not we will follow those cases. In the first of the above cases Mr. Justice Brewer concludes the opinion as follows:  "The railway company was not as to Adams a carrier for hire.  It waived its right as a common carrier to exact compensation.  It offered him the privilege of riding in

its coaches without charge if he would assume the risk of negligence. He was not in the power of the company and obliged to accept its terms. They stood on an equal footing. If he had desired to hold it to its common-law obligations to him as a passsenger, he could have paid his fare and compelled the company to receive and carry him. He freely and voluntarily chose to accept the privilege offered, and, having accepted that privilege, cannot repudiate the conditions. It was not a benevolent association, but doing a railroad business for profit; and free passengers are not so many as to induce negligence on its part. So far as the element of contract controls, it was a contract which neither party was bound to enter into, and yet one which each was at liberty to make, and no public policy was violated thereby." In the last of the above cases Judge Brewer also writes the opinion and concludes as follows: "The result we have reached conforms the law applicable to the present issue to that moral sense which justly holds those who accept gratuities and acts of hospitality to perform the conditions on which they are granted." In the first opinion the learned justice cites a number of decisions of State courts and decisions also of the court of Queen's Bench that support the doctrine announced. He also cites a number of decisions of State courts holding the contrary doctrine. Since there is this diversity of opinion, we feel that we should adopt that view most in accord with our own Constitution and statutes, that which comports logically with our own decisions, which conserves a sound public policy, and reflects our own sense of right and justice.

Our Constitution provides that all railroads operated in this State shall be responsible for all damages to persons and property under such regulations as may be prescribed by the General Assembly. Art. 17, § 12. Section 6773, Kirby's Digest, provides that "all railroads which are now or may be hereafter built and operated in whole or in part in this State shall be responsible for all damages to persons and property done or caused by the running of trains in this State." Strictly and literally construed, under these provisions railroads would be liable for all damages to persons and property, whether caused through the negligence of the company or otherwise. But this court has construed these provisions of the law to mean that railroads are

liable only in cases where they have been guilty of some actionable negligence. *Little Rock & Ft. Smith Ry. Co.* v. *Eubanks,* 48 Ark. 467; *Little Rock & Ft. Smith Ry. Co.* v. *Payne,* 33 Ark. 816.

As carriers of passengers, they are not liable for unavoidable accidents. This court has also held that the railway company is not liable to the party injured where the latter's "own negligence or wilful wrong contributed to produce the injury of which he complains, so that but for his co-operating and concurring fault the injury would not have happened to him. *Little Rock & Ft. S. Ry. Co.* v. *Parkhurst,* 36 Ark. 371; *St. Louis, I. M. & S. Ry. Co.* v. *Foreman,* 36 Ark. 41; *Railway Co.* v. *Cullen,* 54 Ark. 431; *St. Louis, I. M. & S. Ry. Co.* v. *Martin,* 61 Ark. 549. Unavoidable accidents and contributory negligence of the injured party are the only limitations or exceptions thus far recognized and allowed by the court to the constitutional and statutory provisions making railroads liable for *all damages to persons or property* done or caused by the running of their trains.

This court holds that railroads as common carriers of goods cannot exempt themselves by contract from losses and damages caused by their own negligence. *Taylor* v. *Little Rock, M. R. & Texas R. Co.,* 32 Ark. 39; *Taylor* v. *Little Rock, Miss. R. & Texas Ry. Co.,* 39 Ark. 148; *Little Rock, Miss. R. & Texas Ry. Co.* v. *Talbot,* 39 Ark. 523. We hold that a railway company as master can not exempt itself by contract from liability to its servants for injuries caused by its negligence in failing to provide a safe place to work and safe machinery, materials, and tools with which to operate. *Little Rock, & F. S. Ry. Co.* v. *Eubanks,* 48 Ark. 460. In *Little Rock & F. S Ry. Co.* v *Eubanks, supra,* the court, in passing upon the validity of the contract in which the servant agrees to assume all the risks of his employment and to exempt the company from liability "for any injury or damage he may sustain," uses the following language which is pertinent to the case at bar: "A common carrier or a telegraph company can not, by precontract with its customers, relieve itself from liability for its own negligent acts. This, however, may be on the grounds of its public employment." Again: "It is an elementary prin-

ciple in the law of contracts that *modus et conventio vincunt
legem,* the form of the agreement and the convention of the
parties override the law.    But the maxim is not of universal
application.    Parties are permitted by contract to make a law for
themselves only where their agreements do not violate the ex-
press provisions of any law nor injuriously affect the interests of
the public.    Our Constitution and laws provide that all rail-
roads operated in this State shall be responsible for all damages
to persons and property done by the running of trains.    This
means that they shall be responsible only in cases where they have
been guilty of some negligence.    And it may be questionable
whether it is in their power to denude themselves of such
responsibility by a stipulation in advance.    But we prefer to rest
our decision upon the broader ground of considerations of public
policy."    These decisions are grounded upon the principle that
it will be detrimental to the public interest to permit railway com-
panies by private contract to escape a duty which is imposed upon
them by law, namely, to respond in damages to every one who
may be injured through their negligence.    In other words, that
it contravenes public policy for railroad corporations to buy
immunity from liability which the law imposes upon them, by
extending favors as a gratuity, or for a reduced or a nominal
consideration, to those who may chance to be injured through
their negligence.    The reasons for the application of the doctrine
may be more obvious and cogent in the cases of carriers of goods
and master and servant already decided by this court.    But, not-
withstanding the difference in the facts, the same doctrine is
applicable here, and it is in line with the language and logic of
these previous decisions to so hold.    The principle upon which
the rule is invoked in all these cases is well stated in the case of
*Louisville, etc., Ry. Co.* v. *Taylor,* 126 Ind. 126:    "A stipulation
that the carrier shall not be bound to the exercise of care and dili-
gence is in effect an agreement to absolve him from one of the es-
sential duties of his employment, and it would be subversive of the
very object of the law to permit the carrier to exempt himself
from liability by a stipulation in his contract with the passenger
that the latter should take the risk of the negligence of the carrier
or his servants.    The law will not allow the carrier thus to
abandon his obligation to the public, and hence all stipulations

which amount to a denial or repudiation of duties which are of the very essence of his employment will be regarded as unreasonable, contrary to public policy and therefore void."

We can not agree with the court and the learned justice who wrote its opinions in *Northern Pac. Ry. Co.* v. *Adams,* and *Boering* v. *Chesapeake Beach Ry. Co., supra,* that "no public policy was violated" by a contract like the one under consideration, and that to so rule but conforms the law "to that moral sense which justly holds those who accept gratuities and acts of hospitality to perform the conditions on which they are granted." That view ignores the duty to the public which railroad corporations virtually undertake to perform when they receive their charters. By virtue of these they have vast privileges of monopoly in transportation, and the absolute right of eminent domain. They owe in turn the duty to exercise ordinary care which in the case of passengers is the highest degree of care that a person of ordinary prudence would exercise, consistent with the mode of conveyance and the proper conduct and management of the business, to see that their passengers are furnished safe and comfortable transportation. They can not escape this duty. They cannot buy immunity from liability for a failure to discharge it by reduced fare or free transportation. The passenger cannot relinquish the rights which the law gives him in consideration of gratuitous passage. It is not a question of benevolence and hospitality on the part of the carrier in giving, nor the violation of moral obligation on the part of the passenger in receiving without being bound by the terms of the agreement upon which the gratuity was offered and accepted. The question is one of public duty which the State as *parens patriae,* having due regard for the lives and limbs of all her subjects, will not permit to be relegated to the domain of private contract. The interest which the commonwealth has in the comfort and safety of her citizens to see that they are protected from injuries resulting through the negligence of the public carrier or his servants is the same, whether such citizen be a gratuitous passenger or a passenger for hire. As is well said by the Supreme Court of Minnesota in *Jacobus* v. *St. Paul & Chicago Ry. Co.,* 20 Minn. 125: "The more stringent the rule as to the duty and liability of the carrier and the more rigidly it is enforced, the

greater will be the care exercised and the more approximately perfect the safety of the passenger. Any relaxation of the rule as to duty or liability naturally, and it may be said, inevitably tends to bring about a corresponding relaxation of care and diligence upon the part of the carrier, * * * * while it might not ordinarily occur that the presence of a free passenger upon a train for injury to whom the carrier would not be liable, would tend to lessen the carrier's sense of responsibility and vigilance, it still remains true that the greater the sense of responsibility, the greater the care, and that any relaxation of responsibility is dangerous." Other authorities in support of the rule announced are collated in Cyc. 544, note 59. See also 4 Ell. Railroads, § 1608, notes pp. 2514-15. See also the comparatively recent case of *Yazoo & M. V. R. Co.* v. *Grant* (Miss.), 38 Southern Rep. 502, decided since the decisions of the Supreme Court of United States *supra,* and referring to them.

Affirmed.