St. L., I. M. & S. Ry. Co. v. Weakly.

*Notes and Bills* (2d *Ed.*), pp. 501, 506-508, and cases cited.
Judgment affirmed.

## St. L., I. M. & S. Ry. Co. v. Weakly.

1. **EVIDENCE:** *Declaration: Res gestae.*
   In an action against a railroad company to recover the value of a jack which died while in the course of transportation over the defendant's road, the evidence showed that a tramp was found in the car in which the animal sued for, and other jacks, were being carried, and that soon after being removed from the car he said, in the presence of the conductor : " If it had not been for lopping them mules over the head I would have froze to death." The jack was afterwards found dead in the car with blood running from its mouth and nose. *Held:* That the declaration of the tramp was no part of the *res gestae*, and was inadmissible.

2. **CARRIERS:** *Limiting liability: Contract signed under mistake.*
   After a written contract, limiting the liability of a railroad company in the carriage of freight, has been acted upon by both parties, the consignor, in the absence of fraud on the part of the company in procuring his signature to the contract, if he had the opportunity to read it, cannot avoid it on the ground that he did not read, or hear it read, and signed it under a mistake as to its contents.

3. **SAME:** *Rights and liabilities of connecting lines.*
   A railroad company which receives freight from another company under an agreement between the latter and the consignor, is liable for any loss resulting from a failure on its part to perform the contract, and is entitled to any valid limitation of liability therein contained.

4. **SAME:** Contract limiting liability : Measure of damages.
   Where a railroad company carries live stock over its road under a contract, fairly entered into, which limits its liability in any case to $50 for each animal, such limitation if based upon a reduction in the charge made for the transportation of the stock, is reasonable, and will be enforced as the measure of the company's liability for the loss of one of the animals, although the real value of the animal lost is from $600 to $800.

5. **SAME:** *Same : Negligence : Burden of proof.*
   Where live stock is shipped on a railroad under a contract, limiting the carrier's liability, and, pursuant to such contract, the shipper takes charge of the animals during transportation, the burden of proof is upon him in an action against the carrier to recover for the loss of such animals, to show that the loss resulted from the negligence or default of the carrier.

APPEAL from *Nevada* Circuit Court.
C. E. MITCHELL, Judge.

*Dodge & Johnson,* for appellant.

1. It was error to permit the Nashville contract to go to the jury until some proof was offered establishing the fact that the defendant was a party to it, directly or by its agent. No such proof was offered. The stock was received and transported under the Memphis contract, and one of the appellees rode under it on defendant's train free, and received his stock under it, thus recognizing it. Defendant was not a party to the Nashville contract and was bound by none of its provisions.

2. The exemptions of the Memphis contract, limiting the liability to $50, inured to the defendant, being a connecting carrier, and the contract being a through bill of lading. 39 *Ark.,* 158.

3. The failure to read the Memphis contract, or to know or understand its terms, when they signed it, did not relieve appellees, no fraud or deceit being shown or alleged, on part of the railroad. They are estopped to deny its terms. *Cooley on Torts, p.* 438, 489; 44 *Wisc.,* 405; 36 *Id.,* 599; 21 *Id.,* 554; *Ib.,* 80; 56 *Ala.,* 205; 19 *Am. Ry. Rep.,* 205.

4. It was not competent to prove any damage or loss in excess of that limited in the bill of lading. 112 *U. S.,* 337; 46 *Ark.,* 236.

5. The burden was on appellees to show that the death of the jack was due to negligence of the carrier or its servants. 46 *Ark.,* 236. It was competent for the carrier to limit its liability by express contract. 56 *Ala.,* 205; 19 *Am. Ry. Rep.,* 205, and plaintiff having agreed to look after, care for and attend to his stock, the burden was on him to show that the loss occurred through defendant's negligence. If this proof had been made, the liability of the carrier could not exceed $50, the limit expressed in the contract.

St. L., I. M. & S. Ry. Co. v. Weakly.

6. The statement of the tramp was hearsay, and clearly inadmissible.

*Scott & Jones,* for appellees.

1. There was evidence tending to prove the agency of the Nashville Ry. Co., which was recognized and honored by defendant.

2. There was proof that the death of the jack was caused by want of care or neglgence on part of defendant. As to liability see 46 *Ark.,* 236. There was no proof that the death was from any of the exceptions in the contract, and the burden to show this was on defendant. *Ib.*

3. The circumstances under which the Memphis contract was signed was a legal fraud on appellees and avoided it as to them. 21 *Wisc.,* 554; 34 *Vt.,* 565.

4. Evidence showing value of animal properly admitted. As to limitation of liability by railroads see 17 *Wall.,* 357. The Memphis contract was not a *just and a reasonable one,* A reduction of valuation from $300 to $50 on an animal worth $600, without any corresponding benefit to appellees, is unreasonable, 112 *U. S.,* 331–342.

BATTLE, J. This is an action by Weakly & Gooch against the St. Louis, Iron Mountain & Southern Railway Company to recover the value of a jack that died while in the course of transportation over defendant's railway.

The facts, as shown by the testimony, were substantially as follows: On the 22d of December, 1884, plaintiff shipped, at Nashville, Tenn., by the Nashville, Chattanooga and St. Louis Railway, a car load of jacks consigned to themselves at Fort Worth, Texas. They

were to be shipped by way of Memphis, over the Memphis and Little Rock Railroad to Little Rock, and thence over the defendant's road to Texarkana. A written contract was entered into, whereby the Nashville, Chattanooga and St. Louis Railway Company agreed to transport the jacks to its freight station at McKenzie, ready to be delivered to the consignee, or his order, or to such company or carrier whose line might be considered a part of the route to the destination of the stock; and in consideration of reduced rates of freight it was agreed that if any damage occurred by which the carrier was liable, the amount claimed should not exceed $300 for each jack injured.

The stock, in charge of Gooch, one of the plaintiffs, arrived at Memphis on the morning of the 24th of December, 1884. At Memphis the river was then impassable, on account of ice, and Gooch was delayed a day, The agent of the Memphis and Little Rock Railroad told him his stock could go forward on the Kansas City Railway at 9 o'clock the next morning; and on the next day, the 25th of December, he took his stock to the Kansas City Railway depot. The stock was driven on the cars a few moments before the train started. About this time a live stock contract with the Kansas City, Fort Scott and Gulf, and the Kansas City, Springfield and Memphis Railroad Companies was presented to him for his signature, which he signed without reading, supposing it was a pass for himself. So much of it as is necessary to mention in this opinion is in the words and figures following:

"MEMPHIS STATION, December 25th, 1884.

Agreement made between the Kansas City, Fort Scott and Gulf, and Kansas City, Springfield and Memphis

St. L., I. M. & S. Ry. Co. v. Weakly.

Railroad Companies, of the first part, and Weakly & Gooch, of the second part, witnesseth : That, whereas, the Kansas City, Fort Scott and Gulf, and Kansas City, Springfield and Memphis railroad companies, as common carriers, transport live stock as per tariff:

"Now, in consideration that said parties of the first part will transport, for the party of the second part one (1) car load of jacks from Memphis to Fort Worth, Texas, and there deliver to the Kansas City Stockyard Company, at the rate of seventy-six (76) dollars per car load, the same being a special rate, lower than the regular rate mentioned in said tariff between said points, said party of the second part hereby relieves said parties of the first part from the liability of a common carrier in the transportation of said stock, and agrees that such liability shall be that of only a private carrier for hire.

" And the said party of the second part * * * * hereby assumes all risk of injury which the animals, or either of them, shall receive in conequence of any of them being wild, unruly or weak, or by maiming each other or themselves, or in consequence of heat or suffocation, or other ill effects of being crowded in the cars, * * * * or of loss or damage from any other cause or thing not resulting from the negligence of the agents of the said parties of the first part.

"And the said party of the second part further agrees that he will load and unload said stock at his own risk, and feed, water and attend to the same at his own expense and risk while in the stock yards of the parties of the first part awaiting shipment and while on the cars or at feeding or transfer points, or where it may be unloaded for any purpose.

" And it is further agreed that the parties of the second part will see that said stock is securely placed in the

26

cars furnished, and that the cars are safely and properly fastened, so as to prevent the escape of said stock therefrom.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"And it is further agreed that iu no case shall the said railway companies be liable for a greater amount than fifty dollars per head of live stock hereby shipped, and that all the above "rules and regulations for the transportation of live stock" shall be deemed an essential part of this contract.    \*    \*    \*    \*

The evidence that said party of the second part, after a full understanding thereof assents to all the conditions of the foregoing contract is his signature thereto.

E. A. THRUSTON,

Witness : L. L. Crisp.       Agent of the Companies.

[ Pass one.]          WEAKLY & GOOCH, shippers."

Executed in duplicate."

No charges were demanded or paid by plaintiffs for transporting Gooch and the stock over the railroads, except $116 at Nashville.

The stock was shipped over the Kansas City, Springfield and Memphis Railroad to Hoxie, a station on defendant's road 121 miles north of Little Rock. The station agent at Hoxie testified that the car load of jacks was received by defendant at Hoxie over the Kansas City, Springfield and Memphis Railway under the contract of shipment made at Memphis, and was transported to Texarkana under the same contract. Gooch accompanied the stock, riding on the same train with them. The stock arrived at Little Rock in good condition. Shortly after leaving Little Rock the conductor called on Gooch for his contract, and he handed him the Nashville contract, but the conductor refused to accept it,

saying it did not pass him free. He then handed the conductor the contract signed at Memphis, which the conductor took, read and returned, and permitted him to ride upon it. A short distance north of Prescott Gooch got out to examine his stock, and found a tramp in the car with them; and after the train had started he told the conductor about seeing the tramp. When the train stopped at the next station the tramp was taken out of the car, and was permitted to go into the caboose to warm, it being cold and sleeting. He had a stick. Over the objection of the defendant, a witness was allowed to testify that when the tramp went into the caboose and sat down by the stove to warm, he said, in the presence of the conductor: "It is d—d cold, and if it had not been for lopping them mules over the head I would have froze to death."

1. EVI-
DENCE:
Declara-
tion:   Res
gestœ.

Gooch got out several times between Little Rock and Texarkana to look at his stock, and found them standing and apparently all right. He did so after seeing the tramp among them and a short time before they reached Texarkana, and discovered nothing wrong until they arrived at Texarkana, when he found one of the jacks lying dead in the middle of the car, with blood running out of his nose and mouth. He saw no marks of blows or bruises on the animal; its skin was unbroken. He rode on the same train with the stock, according to his contract, from Hoxie to Texarkana, and testified he did not know the cause of the death. He testified that the dead jack was a fine animal, blooded, and of good pedigree, and was worth at Nashville $600, and at Fort Worth $800. When the other jacks reached Fort Worth plaintiffs presented the contract signed at Memphis, and on it demanded and received their stock.

Plaintiffs recovered judgment for $300; and defendant appealed.

The declaration of the tramp was inadmissible. It was no part of the *res gestae,* and appellant should not be affected by it.

Appellant asked, and the court refused, to instruct the jury as follows:

" The court instructs the jury that if they find from the evidence that the plaintiff signed the bill of lading or contract of shipment in evidence, by which said carload of jacks was carried from Memphis, Tennessee, to Fort Worth, Texas, via Hoxie, it matters not if plaintiffs did not read or understand the same, the fact that they signed the same is conclusive, unless said signatures were obtained by fraud on the part of the carriers making the contract; It was plaintiffs' duty to know, and they were bound to know, what the contract contained and meant, and the effect of all its terms and conditions."

But, at the instance of appellees, did instruct them as follows :

" Unless the jury find from the evidence that the Memphis contract, so called in the evidence, was made by the defendant with the plaintiffs for a valuable consideration, they will disregard the same ; and if they find that the same was signed by the plaintiffs, under the supposition alone that it was only for the purpose of having his jacks shipped from Memphis to a point on defendant's line of railway; where the original or Nashville contract would have carried the same, they may entirely disregard said Memphis contract, unless they believe the injuries received by said jacks were received between Memphis and Little Rock."

Appellant also asked, and the court refused, to instruct as follows:

" If the jury find from the evidence that plaintiffs en-

tered into a written contract at the city of Memphis with the Kansas City, Fort Scott and Gulf, and the Kansas City, Springfield and Memphis Railroad Companies, by which it was agreed that said railroads should carry their car-load of jacks from Memphis to Fort Worth, Texas, at reduced rates as a private carrier, and upon certain agreed values of said stock upon a limited liability, that the defendant was and is a connecting carrier of said railroads, and that to carry out the contract it was necessary to carry said stock on defendant's railway; that said defendant received and carried said stock under said contract; then, in that event, the court instructs you that as said bill of lading was a through bill of lading, expressing upon its face a rate of freight to be charged by all the connecting lines from Memphis, Tennessee, to Fort Worth, Texas, the destination of the stock, then its contract for exemption from liability inures to the benefit of the owners of all the lines of the whole route, including defendant company; and if, therefore, they find that there was such a contract, they must find that the same was for the benefit of this defendant, and must control in this case."

Did the court err in giving the instructions asked for by appellees and in refusing those asked for by appellant?

At common law a common carrier, in the absence of a contract limiting his liability, is responsible for any loss or damage, however occasioned, unless it was by an act of God or a public enemy. He is bound to receive and carry all the property offered for transportation, if it be of that character which he carries for the public, subject to the responsibility incident to his employment, and is liable to an action if he refuses. He cannot relieve himself of such responsibilities, except by contract with the shipper, based upon a consideration. He cannot limit

his liabilities by an act of his own; and can only do so by the assent of the parties concerned.    *Taylor v. L. R., M. R. & T. Ry. Co.*, 39 *Ark.*, 148, 157; *Railroad Co. v. Manufacturing Co.*, 16 *Wall.*, 318, 328; *Gaines v. Union Trans. & Ins. Co.*, 28 *Ohio St.*, 418; *S. C.* 14 *Am. Ry. Rep.*, 158.

**2. CAR-RIERS: Limiting liability: Contract signed under mistake.**   Appellees contend that they never assented to the limitation of the liabilities of appellant contained in the contract signed at Memphis, because they signed it without reading or hearing it read, and under a mistake as to its contents.   But this will not relieve them from the contract, unless it was procured by fraud or imposition.   It has generally been held by the courts in this country and in England that such contracts are binding on the shipper, although he did not read or hear them read before signing, provided the carrier resorted to no unfair means, and practiced no fraud or imposition, and the shipper had the opportunity to know the contents. As said by *Hutchinson on Carriers*, " there is nothing unreasonable in this.   Every man of ordinary intelligence knows that no individual or company engaged in the business of carrying to distant places now undertakes to carry his goods subject to the old common law liability of the carrier.   He knows, moreover, that bills of lading are constantly given, not only as the evidence of the receipt of the goods, but as an express and direct notice that they will be carried on certain terms.   Knowing this, he cannot be wilfully blind and plead ignorance, when it was his duty to know; and knowing in such cases is assenting.   If it was his intention to hold the carrier to his common law liability, he should have said so, and have either declined to employ him or sued him for his refusal, after tendering a reasonable sum for his services and risk."   *Hutchinson on Carriers*, sec. 240; *Mo-*

*Millan v. M. S. & N. I. R. R. Co.*, 16 *Mich.*, 79; *Squires v. N. Y. Central R. R. Co.*, 98 *Mass.*, 239; *Long v. N. Y. Cent. R. Co.*, 50 *N. Y.*, 76; *McIlroy v. Buckner*, 35 *Ark.*, 555; *Hallenbeck v. De Witt*, 2 *John.*, 404; *Rice v. Dwight, Manf. Co.*, 2 *Cush.*, 80, 87; *Harris v. Story*, 2 *E. D. Smith*, 363, 367; *Lewis v. Great Western R. Co.*, 5 *H. & N.*, 867; *Cooley on Torts, pp.* 488–491; *Greenfield's Estate*, 14 *Penn. St.*, 489, 504; *Hunter v. Walters*, 7 *L. R. Ch. App.*, 75, 82, 84; *Morrison v. Phillips & Colby Con. Co.*, 44 *Wisc.*, 405, 409; *Fuller v. Madison Mutual Ins. Co.*, 36 *Wisc.*, 599, 603; *Long v. N. Y. Cent. R. Co.*, 3 *Am. Ry. Rep.*, 350; *Mulligan v. The Illinois Cent. Ry. Co.*, 2 *Am. Ry. Rep.*, 322, 328; *Grace v. Adams*, 9 *Am. Rep.*, 131; *S. C.* 100 *Mass.*, 505.

But in this case the Kansas City, Fort Scott & Gulf and the Kansas City and Springfield and Memphis, and the Saint Louis, Iron Mountain and Southern Railway Companies were not parties to the contract made at Nashville. The stock was to have been transported by way of Memphis over the Memphis and Little Rock Railroad to Little Rock, and from there to Texarkana. When it arrived at Memphis it was ascertained it could not be shipped over the Memphis and Little Rock road, without delay, and appellees determined to ship it over another and much longer route; and for that purpose entered into the contract signed at Memphis. Under this contract the stock and one of the appellees were carried from Hoxie to Texarkana, and the stock was delivered to its owners at Fort Worth. Appellant acted under and was governed by it in carrying the stock. If the contract signed at Memphis was procured by fraud and appellees were unwilling to be governed by it, they should have so informed appellant before the delivery of the stock to its agents. They were then in a situation to cor-

rect any mistake or misunderstanding in the terms of the shipment, and definitely adjust its terms. But, having failed in this, they cannot make appellant suffer the consequences of their negligence. If a fraud was committed in the procurement of the contract at Memphis, their negligence enabled the perpetrators to succeed in its commission, and they should bear the loss occasioned by it, if any.

SAME:
Rights and
lities of
n necting
ners.

The Kansas City, Fort Scott & Gulf, and the Kansas City, Springfield & Memphis railroad companies contracted with appellees to transport their stock from Memphis, Tennessee, to Fort Worth, Texas. The appellant, by receiving the stock, became their agent to complete their contract to the extent of shipping the stock over so much of its road as formed a part of the route over which the shipment was to be made. From this fact the law implied a privity between the parties to this action sufficient to enable appellees to sue appellant for any losses sustained by reason of its failure to perform the contract, and gave to appellant the benefit of all valid limitations contained in the agreement upon the carrier's liability. So that while the burdens were imposed, the benefits of the limitations in the contract inured to appellant. *Taylor v. L. R., M. R. & T. R. Co., 39 Ark.,* 148, 158; *Halliday v. The St. L., K. C. & N. Ry. Co.,* 74 *Mo.,* 159; *S. C., 6 Am. and Eng. Railroad Cases,* 433; *Hutchinson on Carriers, secs.* 251, 252, 254, 256.

Appellant contends that the court below erred, because it asked and the court refused to give an instruction in the following words:

" If the jury find, from the evidence, that the plaintiffs entered into a contract with defendant, or its connecting carrier, whereby it was agreed that in no case should the carriers be liable for a greater amount than fifty dollars for each stock or animal shipped therein, then they are instructed that if they find that the defendant is liable at all in

this action, their verdict cannot exceed the sum of fifty dollars."

In the Memphis contract the liability of the carrier for losses or damages was limited to fifty dollars for each jack injured. Should the instruction limiting the liability of appellant to fifty dollars have been given?   .

In *Railroad Co. v. Lockwood*, 17 *Wall.*, 357, it was held: " A common carrier cannot lawfully stipulate for exemption from responsibility when such exemption is not just and reasonable in the eye of the law."

*Hart v. Pennsylvania Railroad Co.*, 112 *U. S.*, 331, was an action like this. In that case the property received for shipment was five horses, and the extent of the carrier's liability agreed upon for each horse was two hundred dollars. By the negligence of the carrier one of the horses was killed and the others were injured. The plaintiff proved the horses were race horses and offered to show damages, based on their value, amounting to over $25,000. The testimony was excluded and he had a verdict for $1,200. On writ of error brought by him, it was held that the evidence was not admissible; that the valuation and limitation of liability in the bill of lading was just and reasonable, and binding on the plaintiff; and that the terms of the limitation covered a loss through negligence. Mr. Justice Blatchford, speaking for the court, said : " This qualification of the liability of the carrier is reasonable and is as important as the rule which it qualifies. There is no justice in allowing the shipper to be paid a large value for an article which he has induced the carrier to take at a low rate of freight on the assertion and agreement that its value is a less sum than that claimed after a loss. It is just to hold the shipper to his agreement, fairly made, as to value, even where the loss or injury has occurred through the negligence of the carrier. The effect of the agreement is to cheapen the freight and secure the carriage

if there is no loss; and the effect of disregarding the agreement, after a loss, is to expose the carrier to a greater risk than the parties intended he should assume. The agreement as to value, in this case, stands as if the carrier had asked the value of the horses, and had been told by the plaintiff the sum inserted in the contract.

" The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for caraiage is based on that value. The shipper is estopped from saying that the value is greater. The articles have no greater value, for the purposes of the contract of transportation, between the parties to that contract. The carrier must respond for negligence up to that value. It is just and reasonable that such a contract, fairly entered into, and when there is no deceit practiced on the shipper, should be upheld. There is no violation of public policy. On the contrary, it would be unjust and unreasonable and would be repugnant to the soundest principles and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss."

The *South and North Alabama R. R. Co. v. Henlein*, 52 *Ala.*, 606, was an action against a carrier on a contract to carry live stock, in which the extent of the carrier's liability was limited to fifty dollars to each animal. The court sai.' ; " We have had much difficulty in determining the validity of the stipulation in the contract, that if loss or injury should occur, for which the company is liable, the amount claimed should not exceed fifty dollars for any one of the animals. If the measure of the liability thus fixed appeared to be greatly disproportionate to the real value of the animal and

the amount of freight received, we should not hesitate to declare it unjust and unreasonable. But as the case is presented, it seems to have been intended to adjust the measure of liability to the reduced rate of freight charged, and to protect the carrier against exaggerated or fanciful valuations. We cannot, therefore, presume it unjust and unreasonable, and it is the measure of appellant's liability."

There are other decisions to the same effect as those cited. See *South and North Alabama R. Co. v. Henlein*, 56 *Ala.*, 368; *S. C.*, 19 *Am. Ry. Rep.*, 200; *Harvey v. The Terre Haute & Indianapolis R. R. Co.*, 74 *Mo.*, 538; *Maguire v. Dinsmore*, 62 *N. Y.*, 35. But all the decisions upon this question are not in harmony. They are cited and reviewed to some extent in *Hart v. Penn. R. R. Co.*, *supra*. After a review of them the court reached the result as above stated.

In *St. L., I. M. & S. Ry Co. v. Lesser*, 46 *Ark.*, 236, this court followed the decisions of the Supreme Court of the United States in *Railroad Co. v. Lockwood* and *Hart v. Pennsylvania R. R. Co.* In that case the carrier transported a car load of mules over its road under a contract which limited its liability to $100 for each horse or mule. One of the horses, of the value of $150, was injured. This court held that the damages the shipper was entitled to recover in that case was the proportion of $100 the horse was lessened in value by reason of the injury.

As a general rule, the common carrier is bound to receive and carry that which is offered to him for transportation. He ought to be entitled to a reasonable reward for his services. As the risk of conveying property of considerable value is greater than that of small value, the care required is, and the reward should be greater. It is, therefore, reasonable and right that the value of the property shipped should be ascertained in order that the carrier may know the extent of his responsibility and the

4. SAME: Contract limiting liability: Measure of damages.

care and attention required, and fix the amount of his reward. As said by Lord Mansfield in *Gibbon v. Paynton,* 4 *Burrows,* 2298: " His warranty and insurance is in respect of the reward he is to receive, and the reward ought to be proportionate to the risque. If he makes a greater warranty and insurance, he will take greater care, use more caution, and be at the expense of more guards or other method of security; and therefore, he ought in reason and justice, to have a greater reward." If, therefore, the measure of the liability of the carrier as agreed upon is adjusted by the reward to be received by the carrier under his contract, and the contract of shipment is fairly entered into, and no deceit is practiced upon the shipper, the contract is reasonable as to the measure of liability and should be upheld.

Inasmuch as the measure of appellant's liability in the stipulations contained in the Memphis contract, is stated to be based on reduced rates of freight paid for the transportation of the stock, it must be presumed, in the absence of evidence to the contrary, that the rate of freight was graduated by the valuation agreed upon as the limit of the carrier's liability, and was reduced under the regular rates in consequence and consideration of the terms or stipulations of the contract. *St. L., I. M. & S. Ry v. Lesser,* 46 *Ark.,* 236.

As to the burden of proof the circuit court instructed the jury, at the instance of appellees, as follows:

" The jury are instructed, as a matter of law, that whenever a common carrier seeks to avoid a liability for losses on account of the contract limiting its liability, the burden of proof, as a general rule, is upon it, not only to show that a limited contract has been made, but also that the loss in question arose from a cause excepted in the contract; and this fact must be established with reasonable certainty, and not rest upon conjecture or possibility. So, in this case, if defendant seeks to avoid its liability for the death of the jack

sued for under a clause of their contract of shipment exempting the company from such liability for injury to said jack, caused by the animals shipped in the car with him, or on the ground that the death of said jack was caused by the inherent vices and propensities of such animals, the burden of proof is upon the defendant to show that the death of said jack was caused by other animals in the car, or their inherent viciousness."

And, at the instance of the appellant, as follows:

"If the jury find from the evidence that plaintiff's stock was received and transported under a written contract or bill of lading, wherein it was stipulated or agreed that the owners or their agents should ride upon the freight trains in which said stock was being transported, and that they should load, transport, feed and care for said stock while on the cars, or at feeding, transfer or other points; and if they further find that plaintiff, J. S. Gooch, one of the owners of said stock, did accompany the said stock and was upon the same train upon which the stock was at the time said animal died, and that said contract exempted the carriers from all liability from injury to said stock, then you are instructed that by virtue of said exemption in said contract contained, the burden of proof is upon plaintiffs to show that said animal was killed by or through the negligence or fault of this defendant; and if you find that no evidence of negligence has been offered showing, or tending to show, that defendant was at fault, then you must find for the defendant."

These instructions are inconsistent with each other; and the one given at the instance of the appellees is misleading and not applicable to the facts in this case.

In *St. L., I. M. & S. Ry Co. v. Lesser, supra,* it is said: "Whenever a common carrier seeks to avoid a liability for losses on account of a contract limiting his liability, the burden of proof, as a general rule, is upon him, not only to show

that a limited contract has been made, but also that the loss in question arose from a cause excepted in the contract." But this court has never applied this rule to any case except those in which the loss was caused by fire or like causes, against which the carrier was an insurer at common law. It did not, in *Railroad v. Lesser*, undertake to say to what class of cases it is applicable. Does it govern in this case?

At common law a carrier is held to the strictest accountability. The reason is, when goods are placed in his care for transportation, the shipper is dependent on him for their safe keeping and delivery. He seldom goes or sends any one to protect his interest. His necessities often compel him to rely solely on the carrier. If the goods are lost through the grossest negligence of the carrier or his servants, or stolen by them, or others in collusion with them, he is unable to prove it by any one, except the carrier's servants. If he is compelled to prove that his goods were lost through the fault of the carrier before he can recover, his ability to sustain an action would be necessarily uncertain and sometimes impossible. To protect him, and to insure the utmost good faith and diligence in the carriage and delivery of freight, the common law imposes upon the carrier the responsibility of an insurer against all losses, except those occasioned by the act of God or the public enemy; and in case of damage or loss requires him to show the cause. To exonerate himself from liability, the burden of proof is upon him to show that the loss or damage was caused by the act of God or the public enemy. This rule of evidence is the necessary result of the common law liability and the circumstance that the cause of the loss is presumed to be peculiarly within the knowledge of the common carrier.

5. SAME:
   Same:
Negligence:
Burden of
proof.

But in this case there was a restriction upon the common law liability of the carrier. Appellees agreed to load the cars with the stock, and unload, feed, water, and

attend to them, at their own expense and risk, while in the stock yards of the carriers awaiting shipment, and on the cars, or at feeding or transfer points, or when the same might be taken off the cars for any purpose, and to see that the cars were securely fastened; and, for that purpose, one of them was allowed to ride, and did ride, on the train with the stock, from Hoxie to Texarkana, free of additional charge. Under the contract, they took charge of the stock during transportation, and relieved appellant of any responsibility for the discharge of those duties of a common carrier which they undertook to perform, and confined its duties, by the Memphis contract, to the furnishing suitable cars and hauling them to the place of destination. Having the care of the stock, the liabilities of a common carrier which make it his duty to account for the loss of freight, did not devolve on appellant. Being in charge, they were presumed to know the cause of the loss of the jack found dead, if either party to the contract does; and the burden of proof is upon them to show that the default or negligence of appellant was the cause before they can be entitled to recover. *Louisville, Cincinnati & Lexington Railroad Co. v. Hidger,* 9 *Bush,* 645, 651; *Clark v. St. Louis, Kansas City & Northwestern Ry. Co.,* 64 *Mo.,* 441, 448; *Harvey v. Rose,* 26 *Ark.,* 3; *Kansas Pacific Ry. Co. v. Reynolds,* 8 *Kansas,* 623, 641.

For the errors indicated, the judgment of the court below is reversed, and the cause is remanded for a new trial.