ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* BUTLER.

Opinion delivered April 29, 1907.

1.  CARRIER—LIMITATION OF LIABILITY IN LIVE STOCK SHIPMENT.—A stipulation in a bill of lading of live stock that the shipper "shall assume all risk, expense of feeding, watering, bedding or otherwise caring for the live stock covered by this contract while in cars, yards, pens, or elsewhere," being based upon a reduction in the freight rate, is valid and binding.   (Page 475.)

2.  SAME—LIVE STOCK SHIPMENT—CONTRACT LIMITATION.—A stipulation in a bill of lading for the shipment of live stock that no action shall be maintained against the carrier unless the same is commenced within six months after the cause of action shall occur is reasonable. (Page 475.)

Appeal from Miller Circuit Court; *Joel D. Conway,* Judge; reversed.

*S. H. West* and *Gaughan & Sifford,* for appellant.

1.  The contract involved is a limited liability contract on the part of appellant, and these limitations are binding on the shipper.   50 Ark. 406.

2.  The burden was on plaintiff to show that the damage was caused either by reason of furnishing a defective car, or by the negligent handling of the car.   50 Ark. 414.

3.  If plaintiffs had undertaken to load the car, defendant company would not have been liable for injuries caused by overloading, even under the common law.   56 Ark. 425.

Where instructions are conflicting, a correct instruction does not heal the vice of an erroneous one.   71 Ark. 459.

4.  The provision in the contract limiting the time for bringing an action is reasonable, and was binding on the shipper, 54 Ark. 376; 64 U. S. 386; 6 Cyc. 508.

*Webber & Webber,* for appellees.

1.  A limitation in a carrier's contract of the time in which to bring suit, while recognized as lawful, must nevertheless be reasonable, and whether or not it is reasonable is ordinarily a question of fact for the jury, the burden of proof being on the carrier to show its reasonableness, where the facts are disputed. 1 Hutchinson on Car. (3 Ed.), § 448; 23 S. W. 298; 24 S. W. 355; 27 S. W. 110; 63 Ark. 336; 70 Ark. 406.

The action of the freight agent in causing plaintiffs to sur-render their bill of lading in connection with their notice of dam-ages, and his representations that the claim was being investi-gated and would be settled, would amount to a waiver as to the limitation of time for bringing suit.   70 Ark. 401; 1 Hutchin-son on Car. (3 Ed.) § 444; 6 Cyc. 509.

The carrier must afford the shipper the opportunity to con-tract without limitations upon its common-law liability, other-wise the limitations are void.   57 Ark. 112.

2.   The damage being uncontroverted, the burden was on the defendant to show affirmatively that it was due to some cause exempted by its contract.   1 Hutchinson on Car. (3 Ed.) 449; 46 Ark. 236.

BATTLE, J.   On the 23d day of September, 1903, J. R. But-ler and Huddleston Brothers at McNeil, a station on the St. Louis Southwestern Railway, in this State, delivered to the St. Louis Southwestern Railway Company fifty-two head of cattle to be shipped in the name of S. S. McCarver to Huddleston Bro-thers, at Texarkana, Arkansas, under and pursuant to the terms and conditions in the following contract:

"This agreement made between the St. Louis South-western Railway Company, of the first part, and S. S. Mc-Carver, of the second part, Witnesseth, That for the con-siderations and the mutual convenants and conditions herein contained, the said first party will transport for the said second party the live stock described below, and the parties in charge thereof, as hereinafter provided, viz.:

"One car said to contain 52 head of stock cattle from Mc-Neil, Ark., station, to Texarkana station, consigned to Hud-dleston Bros., Texarkana, Ark., at the rate of Tf......per...., from McNeil to Texarkana, subject to minimum weights and lengths of cars specified and provided for in tariff; said rate being less than the rate charged for shipments transported at carrier's risk, for which reduced rate and other considerations it is mutually agreed between the parties hereto as follows:

*     *     *     *     *

"2.   That the live stock covered by this contract is not to be transported within any specified time, nor delivered at desti-

nation any particular hour, nor in season for any particular market.

"3. That the first party is exempted from liability for loss or damage arising from derailments, collision, fire, escapement from cars, heat, suffocation, overloading, crowding, maiming, or other accidents or causes not arising from negligence of the first party.

"4. That the second party shall assume all risk, expense of feeding, watering, bedding and otherwise caring for the live stock covered by this contract while in cars, yards, pens, or elsewhere, and shall load and unload the same at his own expense and risk.

\*     \*     \*     \*     \*

"6. That, as a condition precedent to any damages or any loss or injury to live stock covered by this contract, the second party will give notice in writing of the claim therefor to some general officer or to the nearest station agent of the first party, or to the agent at destination, or some general officer of the delivering line, before such stock is removed from the point of shipment or from the place of destination, and before such stock is mingled with other stock, such written notification to be served within one day after the delivery of the stock at destination, to the end that such claim may be fully and fairly investigated; and that a failure to fully comply with the provisions of this claim shall be a bar to the recovery of any and all such claims.

\*     \*     \*     \*     \*

"13. That no person other than the owner of the stock shipped, or his duly authorized agent, in the name of the owner, shall be allowed to sign this contract.

"14. That no suit or action against the first party for the recovery of any claim by virtue of this contract shall be sustainable in any court of law or equity unless such suit or action be commenced within six months next after the cause of action shall occur; and, should any suit or action be commenced against the first party after the expiration of six months, the lapse of time shall be constituted conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding.

"15. That in making this contract the undersigned owner, or other agent of the owner, of the stock named herein expressly acknowledges that he has had the option of making this shipment under the tariff rates, either at carrier's risk or upon a limited liability, and that he has selected the rate and liability named herein, and expressly accepts and agrees to all the stipulations and conditions herein named.

"16. That the evidence that the said second party, after fully understanding and accepting all the terms, covenants and conditions of this contract, including the printed rules and regulations on the back thereof, and that they all constitute a part hereof, fully assents to each and all of the same, is his signature hereto.

"F. A. Key, Agent for St. L. S. W. Ry. Co.

"S. S. McCarver, Shipper."

The cattle, except one, were delivered at Texarkana, in a damaged condition; six were dead, six died soon after, and one escaped. On the 17th day of May, 1904, Butler and Huddleston Brothers brought this action in the Miller Circuit Court against the St. Louis Southwestern Railway Company to recover the damages; and alleged in their complaint that the cattle were delivered as before stated; "that defendant accepted the cattle, issuing its bill of lading therefor in the name of McCarver, and negligently failed to provide a suitable and safe car for their transportation, but loaded the cattle in an old and defective car, unsuitable for same, in this, towit: That said car was not a regular stock car, and had a damaged floor with holes therein, and was otherwise battered and defective, and wilfully and negligently loaded said cattle without bedding of any kind, and that defendant so wilfully and negligently handled its train between the points named that said cattle were thrown against each other, against the sides and upon the floor of said car, whereby they were killed, maimed, bruised and otherwise injured; that after reaching Texarkana defendant unloaded said cattle and after unloading wilfully and negligently permitted to escape from the pens one cow of the value of $15; * * * that by reason of the acts of negligence complained of plaintiffs have been damaged in the sum of $336 with interest at the rate

of six per cent. per annum from October 1, 1903;" and ask for judgment for that amount and interest.

"The defendant answered, denying every material allegation of the complaint, and alleging that it had nothing to do with the bedding of the car, and pleading the conditions of the contract. of shipment, wherein it was stipulated that the shipper would assume all risks and expenses of bedding, watering, feeding and otherwise caring for the stock while in cars, yards, pens, or elsewhere, and that he should load and unload same at his own expense and risk, and that whatever injuries said stock received were on account of the fact that they were overloaded, or the fact that the shipper failed to bed the car, or from the fact that strong and weak cattle were put in the same car; and also pleaded in bar of the action a provision in the contract of shipment that suit should be brought within six months on a claim for damages arising therefrom."

Defendant alleged that the shipper, McCarver, traveled with the cattle and had charge of them while *en route.*

Plaintiffs recovered a judgment for $293.00, and the defendant appealed.

Appellant furnished appellees with a defective car, unfit for the purpose it was used. The cattle were of various sizes and ages. Neither of appellees were present when the car was loaded. Their agents or servants loaded the car with the cattle, crowding all of them in the same car without any bedding. Many of the cattle were thrown down and trodden under foot while in the car. Six died on the cars, six died soon after delivery from injuries received *in transitu.* The evidence tended to show that overloading and the loading the weak and strong cattle in the same car, and the failure to furnish the car with bedding contributed materially to the damage of the cattle. The cause of action occurred in September, 1903, and this action was commenced on the 17th day of May, 1904, more than six months after the cause of action accrued.

The court instructed the jury over the objections of the appellant as follows:

"If you find from a preponderance of the evidence in this case that the plaintiffs, through their agent, one Carver, delivered cattle to the defendant at McNeil, Arkansas, for trans-

portation to Texarkana, and that said cattle were injured and damaged by reason of a defective or unsuitable car provided them by the defendant, or by reason of overloading by the railroad company or lack of bedding in said car, then your verdict should be for the plaintiffs."

And refused to instruct the jury, at the request of the appellant, as follows:

"The jury are instructed to render a verdict for the defendant."

"3. The jury are instructed that unless the plaintiff has shown by a preponderance of the evidence that the stock were injured either on account of a defective condition of a car in which they were shipped or on account of some rough handling of the train in which the cattle were being carried, which was not ordinarily incident to the handling of freight trains, their verdict must be for defendant."

"4. The jury are instructed that the defendant is not liable for any injuries to the cattle caused by their inherent vices or natural propensities; and if they find from the evidence that the injuries caused to the stock were caused by being overloaded or on account of small and weak cattle being loaded with large and strong cattle, thereby causing the weaker ones to be knocked down and trampled on, for such injuries your verdict must be for the defendant.

"5. The jury are instructed that the plaintiffs assumed the risks of the expense of bedding, watering and feeding and otherwise caring for the cattle while in the cars, pens, yards or elsewhere, and they also assumed the risks and expense of loading and unloading the same. And they can not assess against the defendant any damages for injuries occasioned by these things."

And modified and gave them over the objections of the appellant as follows:

"3. The jury are instructed that, unless the plaintiff has shown by a preponderance of the evidence that the stock were injured either on account of a defective condition of the car in which they were shipped, or for want of bedding, if the agent agreed to bed the car, or on account of some rough handling of the train in which the cattle were being carried, which

was not ordinarily incident to the handling of freight trains, their verdict must be for defendant.

"4. The jury are instructed that the defendant is not lia-. ble for any injuries to the cattle caused by their inherent vices or natural propensities; and if they find from the evidence that the injuries to the stock were caused by inherent vices, or natural propensities, or on account of small and weak cattle being loaded with large and strong cattle, thereby causing the weaker ones to be knocked down and trampled on, for such injuries your verdict must be for defendant.

"5. The jury are instructed that the plaintiffs assumed the risks and expense of bedding, watering, feeding, and otherwise caring for stock while in the cars, pens, yards or elsewhere, and they also assumed the risks and expenses of loading and unloading the same. And they can not assess against the defendant any damages for injuries occasioned by these things, unless the agent of the company agreed to do these things itself."

The court erred in instructing the jury to return a verdict for appellees if they found that the cattle were damaged by reason of overloading by the railroad company or lack of bedding. There was no evidence that the railroad company loaded the car, but on the contrary the undisputed evidence shows that the appellees did the loading, and assumed the risk of the loading, and exempted appellant from all liability for loss or damage arising from loading and want of bedding. This stipulation was based upon a valuable consideration, and is valid and binding. *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Weakly,* 50 Ark. 397; *Fordyce* v. *McFlynn,* 56 Ark. 424.

The instructions as a whole are defective in this, they are inconsistent.

It was agreed by all the parties to the contract sued on:

"That no suit or action against the first party (appellant) for the recovery of any claim by virtue of this contract shall be sustainable in any court of law or equity, unless such suit or action be commenced within six months next after the cause of action shall occur; and, should any suit or action be commenced against the first party (appellant) after the expiration of six months, the lapse of time shall be conclusive evidence against the validity of such claim, any statute of limitations

to the contrary notwithstanding." The cause of action occurred in September, 1903, and this action was commenced on the 17th day of May, 1904. According to the contract of the parties it was barred and can not be maintained. St. Louis & San Francisco Railroad Company v. Pearce, ante p. 339.

The appellees allege in their brief that "the carrier must afford the shipper the opportunity to contract without limitations upon its common-law liability; otherwise the limitations are void." No such right or duty was involved in the issues in this case; and no question involving it is presented for our consideration. The validity of the contract sued on was not questioned in the trial in the circuit court.

Reversed and remanded for a new trial.