St. Louis & San Francisco Railroad Company v. Burgin.

Opinion delivered July 15, 1907.

1.   Carrier—limitation of liability—validity.—Stipulations in a carrier's contract for the shipment of live stock reducing the amount of the carrier's liability, changing the respective duties of the carrier and shipper with reference to the loading and unloading and the feeding and watering of such stock, and fixing limitations on the time of bringing an action on the contract, if based upon a reduced rate or other consideration, are valid. (Page 505.)

2.   Same—when liability commences.—The liability of a carrier for stock tendered to be transported over its line commences when the animals are placed in the usual place for receiving them for shipment to await shipment, and requires the carrier to furnish the necessary facilities for loading and unloading the stock. (Page 506.)

3.   Same—restriction of liability—preexisting damages.—Where, by the carrier's negligence, stock tendered to it for shipment was injured before a written contract was signed by the shipper, such preexisting damages are not covered by stipulations in the contract releasing or limiting the carrier's liability. (Page 507.)

Appeal from Washington Circuit Court; *J. S. Maples,* Judge; affirmed.

### STATEMENT BY THE COURT.

Van Buren was in Memphis with three race horses and some household and kitchen furniture, which he desired to ship over the appellant's road to Rogers, Arkansas. In the forenoon he applied for a car for said purpose, and inquired as to the rate, and was informed that it would be $50 (or, as he once put it, "near $50"). He desired to have his horses placed in one end of the car and his household goods, etc., in the other end, and was told by the agent that such an arrangement could be made. A car was shown to him, and it was agreed that it should be set out at the stock pen for his use, and he was told that he could begin loading at five o'clock that afternoon.

Van Buren asked the agent if he wanted him to sign the contract then, but he said no, that he could not, or need not, sign it until after the horses were loaded, and then to come and sign a contract.

The horses were loaded about five o'clock, and, in loading one of them, a race mare called Nina Van Setter (who was jointly owned by the appellees) fell through the platform and was injured. There is a controversy as to whether this injury was due to a defect in the platform over which she was being taken into the car under the supervision of an employee of the company in charge of the loading, or whether it was due to Mr. Van Buren causing the mare to be loaded into the car before it was brought to the proper place and on his own responsibility and contrary to the directions of the employee of the company whose duty it was to load the stock.

About seven thirty the same evening Van Buren returned to the office of the company and then signed an offer of shipment of three head of horses and an emigrant's outfit, placed value upon each, and agreed to accept reduced rates, and signed the live stock contract which followed said offer on his part, and which contract was signed by the company's agent also. The shipment was classed as an emigrant's outfit, and charges fixed upon that basis.

The contract contained these agreements:

"(a)  The shipper hereby agrees ......................

(b)  That he will load, unload, and when necessary reload, said stock, and feed, water and attend to the same at his own risk and expense, while the same are in the care of the company, or of any connecting line, or lines, or while in any stock yards of the company or any connecting line * * *; that neither the company nor any connecting line or lines over which said freight may pass shall be responsible for any loss, damage or injury which may happen to said freight or be sustained by it while being loaded or unloaded."

Other clauses stipulated that no actions should be sustained for damages unless brought within six months, and the liability for the horses was limited to $100 each.

There is a conflict as to whether the agent was notified at the time this contract was signed that the horse was already injured. The agent with whom the written contract was entered into was not the same agent who was in charge of the office when the preliminary arrangements were made.

Except as indicated, there is no dispute as to the facts above stated. Suit was brought for the damages incurred while loading the mare, and the appellees, Burgin and Van Buren, recovered a verdict for $250, and judgment was rendered upon it, and the railroad company has appealed.

*L. F. Parker* and *B. R. Davidson,* for appellant.

1.  The contract was understood and binding in parol before reduced to writing; and, when reduced to writing without objection, it became the evidence of the original intention of the parties, and was binding from the beginning.  30 La. 50; 21 N. Y. 305-8; 14 Oh. St. 292; 144 N. Y. 209; 1 Hutch. on Car. § § 167-171; 21 Fed. 433; 74 *Id.* 94-101; 16 A. & E. R. Cas. 126.

2.  It was the duty of the shipper to notify the agent of the value of the mare. He could not ship her under the rate elected without representing her value to be $100, and it would be a fraud to allow him to recover a greater amount. 50 Ark. 397; 71 *Id.* 185, 188; 74 Mo. 538; 1 Hutch. on Car. § § 408-9; 112 U. S. 331; 22 Atl. 1113; 23 *Id.* 870.

3.  Under the contract the suit was barred.  14 S. W. 913; 15 *Id.* 164; 30 A. & E. R. Cas. 49.

4.  It was error to admit the testimony of J. A. Burgin as to market value in Memphis.  60 N. Y. 469; 16 Am. & E. R. R. Cas. (N. S.) 166; 130 U. S. 611; 24 N. W. 756; 41 *Id.* 456; Underhill on Ed. p. 293.

5.  The contract was clearly admissible in evidence. Kirby's Digest, § 3108; 1 Hutch. on Car. § § 401, 408-9; 50 Ark. 397; 71 Ark. 185, 188; 82 Ark. 253.

*Walker & Walker,* for appellees.

1.  The evidence shows the animal was injured by the negligence of the company in maintaining its platform *before* the written contract was signed.  The railroad company is bound to provide necessary means and facilities for loading stock. Moore on Carriers, p. 501; 92 Ga. 384; 87 Ky. 626; 45 Minn. 85; 31 S. W. 237.  It is liable for damages to stock by reason of failure to provide such facilities and keep them safe.  82 Tex. 614; 27 Am. St. Rep. 926.  The platform was defective.  9 S. W. Rep. 699; 92 Ga. 384.

2.  The company is liable under the contract.  The stipulation is invalid as against an injury resulting from the negligence of the carrier.  19 S. W. Rep. 590; 32 Ark. 398; 39 *Id.* 148; *Ib.* 523; 47 *Id.* 97; 57 *Id.* 112; *Ib.* 127.

HILL, C. J., (after stating the facts.)  The issue of fact as to whether the injury was caused by the negligence of the railroad or the owner was properly submitted to the jury, and there are sufficient facts to sustain a verdict upon that issue either way.  Hence the court must accept the jury's finding and assume that it was due to a defect in the platform over which the mare was being loaded under the directions of the appellant which caused the injury.

The court excluded the contract on the alleged ground that it was unjust, unreasonable and oppressive, and refused to allow the same to be read in evidence to the jury.  This ground is not tenable.  The consideration recites that it is based upon a consideration, viz., a reduced rate.  This being true, the stipulations reducing the amount of liability, changing the respective duties of the carrier and shipper in certain designated respects, and fixing limitations on the time of bringing the action, are valid, as has frequently been held.  *St. Louis, I. M. & So. Ry. Co.* v. *Lesser,* 46 Ark. 236; *St. Louis, I. M. & So. Ry. Co.* v.

*Weakly,* 50 Ark. 397; *Railway Co.* v. *Cravens,* 57 Ark. 112; *Railway Co.* v. *Spann,* 57 Ark. 127; *St. Louis & S. F. Rd. Co.* v. *Pearce,* 82 Ark. 339; *St. Louis & S. F. Rd. Co.* v. *Pearce,* 82 Ark. 353; *St. Louis S. W. Ry. Co.* v. *Butler,* 82 Ark. 469.

All the facts necessary to make this contract a valid one are recited in the face of it. It was said in the Pearce case, 82 Ark. 353, *supra,* that it was improper to permit a plaintiff to testify that he had signed such a contract without reading it, and that the agent did not inform him that there was another rate under a contract of unrestricted liability. "The agent was not bound to so inform them unless requested to do so, as information was obtainable from other sources provided by law; unless the agent refused, upon demand, to accept the shipment at another rate under a contract for unrestricted liability, there is no reason for holding the contract to be void, as this court has held that the contract is valid and binding where it is not forced upon the shipper."

But does the contract control in this case? The appellant argues that the written contract should relate back and cover the injury to the animal, which occurred some two hours before the contract was executed, on the theory that a verbal contract was then entered upon, and that that verbal contract was later reduced to writing. But the facts do not sustain the principle invoked. The preliminary arrangements only extended to ascertaining whether the car could be obtained, and what the rate would be for it. There were no negotiations then as to the classification of the outfit, which finally settled the rate, or as to the terms or conditions or limitations which entered into the contract as made in the evening. The mere privilege to ship at a given time, at an approximate price, was accorded; and Van Buren was told that the contract could not, or need not, be signed until the stock was loaded. The company's agent who signed the contract positively fixes the time of contracting at 7:30 P. M., and he does not seem to have known of the preliminary arrangement made with the other agent in the forenoon.

"The liability of the carrier for stock to be transported over its line commences when the animals are placed in the usual place for receiving them for shipment to await shipment." Moore on Carriers, page 512. There is a common-law liability upon

carriers of live stock requiring them to furnish the necessary facilities for loading and discharging stock at their yards and stations, and all other facilities necessary to the safe and convenient loading and unloading of stock. Moore on Carriers, 500-1. This common-law liability can only be released or limited upon a consideration; and where was the consideration in this case? The injury was done before the contract was entered into. Where damages have already accrued by the negligence of the carrier before the contract is entered into, it has been several times held by this court that such pre-existing damages are not covered by the stipulations in the contracts releasing or limiting liability. *St. Louis, I. M. & So. Ry. Co.* v. *Law,* 68 Ark. 218; *St. Louis, I. M. & So. Ry. Co.* v. *McNeil,* 79 Ark. 470; *St. Louis & S. F. Rd. Co.* v. *Pearce,* 82 Ark. 353.

This statement from *St. Louis & S. F. Rd. Co.* v. *Pearce, supra,* fits the facts here, and is controlling: "The contract in this case was based upon a reduced rate, but the evidence shows that it was a printed form of contract given to all shippers alike who desired the reduced rate upon the stipulated terms. It is unreasonable to require a shipper to release the carrier from a liability already accrued on account of negligence or failure to perform a duty owing to shippers. If the defendant was liable to the plaintiffs for failure to furnish cars, then it had no right to require a release of this liability before according to them the privilege of shipping upon terms the same as those given to other shippers who asserted no claim for damages. The claim for damages already accrued was a distinct matter, and was not a subject to be included in a contract for shipment subsequently entered into, unless based on a separate consideration for the release of liability."

This contract therefore was not properly evidence in this case, and of course the defense based upon it went out with it.

It is argued that there was error in admitting testimony as to the market value of the mare in Memphis without sufficient foundation having been laid for such evidence, and some other matters are pointed out, but the court finds none of these prejudicial.

Judgment is affirmed.