CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. SLAUGHTER.

84
187

423
343

Opinion delivered November 25, 1907.

CARRIER—LIVE STOCK—LIABILITY OF INITIAL CARRIER.—A stipulation in a bill of lading of live stock that the initial carrier shall not be liable, in the event of injury or loss to said stock happening beyond its own line, is valid if based upon a reduction in rate or other valid consideration.

Appeal from Logan Circuit Court; *Jeptha H. Evans,* Judge; reversed.

### STATEMENT BY THE COURT.

The appellee by this suit seeks to recover of appellant for damages alleged to have accrued to appellee by reason of injury to two carloads of cattle caused through the negligence of appellant in transporting same from Magazine, Arkansas, to St. Louis, Missouri, under contract with appellee. The complaint specifically sets forth the alleged negligence in transporting the cattle from Magazine, Arkansas, to Ft. Smith, Arkansas, and from Ft. Smith, Arkansas, to St. Louis, Missouri, and also specifically sets forth the damages sustained, amounting in the aggregate to $525, for which judgment was prayed.

The appellant in its answer admitted the contract with appellee for the shipment of cattle, and alleged that appellant was only liable under the contract for damage done through its negligence while the cattle were in its possession, denied that any damage was done through its negligence, and set forth that the cattle were delivered to its connecting carrier, the St. Louis & San Francisco Railroad Company, at Wister, Indian Territory, in as good condition as when received by defendant at Magazine, Arkansas. The answer also denied that there was any negligence after the cattle were delivered to the connecting carrier at Wister, but alleged that appellant was not liable for such negligence, if it was shown.

The contract, as proved, was one in which the appellant undertook for a specified rate of freight to transport appellee's cattle from Magazine, Arkansas, to St. Louis, Missouri, the rate being less than the rate charged for shipments at the car-

rier's risk. On account of the "reduced rate" and other considerations, it was "mutually agreed between the parties," among other things, that "under no circumstances shall the Chicago, Rock Island & Pacific Railway Company be held liable for any injury to or loss of the stock transported hereunder, from any cause whatsoever, happening or accruing beyond its own line, and, in the event of injury to or loss of said stock, only the carrier on whose line the injury or loss actually occurs shall be liable."

On the cross-examination of appellee the following occurred:

"Q. To what railroad company were your cattle delivered at Wister, Indian Territory? A. I presume to the Frisco; I don't know. I thought the whole thing was the Rock Island system. Q. You knew it was not the regular line of the Rock Island, but you thought it was a branch of it? A. I thought the Rock Island was a branch of the Frisco. Q. But you know at Wister that your cattle were delivered to the Frisco and carried from there by them to St. Louis? A. Yes, sir."

Attorney for defendant: "I desire to move the court to exclude from the consideration of the jury all the testimony of this witness as to delays, rough treatment and injury to the cattle after they left Wister, Indian Territory, and before they reached St. Louis, on the ground, as stated in my opening, that defendant, under the contract of shipment in this case, is not liable for any damages which occurred after the cattle were delivered to the connecting carrier, St. Louis & San Francisco Railroad Company, at Wister. The court overruled defendant's motion, and the defendant excepted.

The record shows at another place the following:

"Q. State, Mr. Slaughter, whether you were unnecessarily delayed at any other point between Wister and Ft. Smith." Attorney for defendant: "To save frequent interruptions, may I not have the privilege of saving exceptions with reference to delays after leaving Wister without calling the court's attention to each separate objection?" The court: "You may; the court understands your contention. Go ahead, Mr. Slaughter."

The appellee introduced evidence tending to show negligence in the carrier from Wister to Ft. Smith, and from Ft.

Smith to St. Louis. It is conceded by appellant that it is liable, and that the judgment is correct, if it is liable for the injuries occurring on the St. Louis & San Francisco Railroad.

The court instructed the jury as follows:

"This is a contract of shipment from Magazine, Arkansas, to St. Louis, Missouri, and under it defendant is liable, under the proof here, for all damages, if any, sustained by the shipment from the acts of negligence charged in the complaint, if proved, or such of them as are proved, if any, anywhere from Magazine, Arkansas, to St. Louis, Missouri."

Appellant duly saved its exceptions, and asked the following:

"3. You are instructed that under the contract of shipment in this case the defendant is not liable for any damages which may have occurred to said cattle after they were delivered to the St. Louis & San Francisco Railroad Company at Wister, Indian Territory." This was refused, and the appellant again duly excepted.

The verdict and judgment were for appellee, and this appeal duly prosecuted.

*Buzbee & Hicks,* for appellant.

1. Where the contract for shipment of cattle limits the carrier's liability to damage occurring on its own line, it is not liable for damage occurring on connecting line, and the jury should be so instructed. 77 S. W. 29; *Id.* 1.

2. The court erred in instructing the jury in effect that appellee could recover for damage occurring anywhere between Magazine and St. Louis. 32 Ark. 393, and cases cited; 63 Ark. 326; 50 Ark. 397.

*Priddy & Chambers,* for appellee.

1. The exemption clause in the contract was merely for the purpose of fixing the liability as between the several carriers, and not in any way restricting the liability of the initial carrier to the shipper. 87 S. W. 99; 1 Hutchinson on Carriers, § 240.

2. There was no proper proof that appellant delivered the shipment to a connecting carrier—that the carrier delivering it in St. Louis was not a part of appellant's system of railroads. The court's instruction was right.

WOOD, J., (after stating the facts.)  The contract itself showed that the parties to it contemplated that the cattle were to be delivered by appellant to a connecting carrier.  For it expressly limits the liability to injuries occurring on its own line, and specifies that the liability of appellant "terminates upon delivery by it of said cars to its connecting carrier."  The proof showed that appellee's cattle at Wister "were delivered to the Frisco, and carried from there by them to St. Louis."  This evidence was at least *prima facie* proof that the Frisco was a connecting carrier, and, in the absence of any evidence to the contrary, was sufficient to warrant a finding to that effect.  The court, in passing upon the evidence offered, well understood the contention of appellant that the Frisco was a connecting carrier, and the ruling indicates that the court assumed that such was the fact, without the necessity of further proof upon the subject. The court erred in giving the instruction set out in the statement, and in refusing the request asked by appellant.

The trial court, under the rule announced by this court in *Little Rock & F. S. Ry. Co.* v. *Odom*, 63 Ark. 326, should have confined the inquiry to the damage, if any, produced by the negligence of appellant, before the delivery of the cattle to the connecting carrier.  See also *Taylor* v. *Little Rock, M. R. & T. R. Co.*, 32 Ark. 393; *Packard* v. *Taylor*, 35 Ark. 402; *St. Louis, I. M. & Sou. Ry. Co.* v. *Weakley*, 50 Ark. 397; *International & G. N. R. Co.* v. *Ernest & Bost*, 77 S. W. 29, 30; and *International & G. N. R. Co.* v. *Startz*, 77 S. W. 1.

Judgment reversed, and cause remanded for new trial.