ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.*
JONES.

Opinion delivered January 31, 1910.

1.  CARRIERS—CONCLUSIVENESS OF BILL OF LADING.—Previous contracts between a shipper and carrier relating to the shipment of freight will be deemed to be merged in the bill of lading.  (Page 545.)

2.  SAME—RELEASE OF LIABILITY—CONSIDERATION.—A stipulation in a bill of lading releasing a carrier from liability for damages already accrued is not binding where there is no consideration for such release. (Page 546.)

3.  SAME—STIPULATION AS TO TIME OF CARRIAGE.—A stipulation in a bill of lading that cattle should not be transported within any specified time or delivered at any particular hour does not exempt the carrier from the consequences of its failure to transport the cattle within a reasonable time.  (Page 546.)

4.  SAME—CONTRACT AGAINST LIABILITY.—Carriers cannot contract for exemption from liability for losses and damages happening from the negligence of themselves or their sarvants.  (Page 546.)

5.  SAME—CARRIAGE OF LIVE STOCK—WHEN LIABILITY BEGINS.—Under the Hepburn Act of Congress, carriers may stipulate with shippers of live stock that the latter shall assume all risk and expense of caring for the live stock until loaded in the cars.  (Page 546.)

6.  SAME—CARRIAGE OF LIVE STOCK.—A contract for shipment of live stock which exempts the carrier from liability for the cattle while in the pen and unloaded does not change the duty of the carrier to furnish cars for the transportation of the cattle within a reasonable time after demand therefor.  (Page 547.)

7.  SAME—AGREEMENT TO PAY FOR LOST CATTLE—CONSIDERATION.—Where a shipper of live stock agreed to be liable for them until placed in the car, and they escaped from the cattle pen, and some of them were never recovered, an agreement made by the carrier's agent that the carrier would pay the value of the lost cattle if the shipper would get up such cattle as he could find and ship them was without consideration and not binding on the carrier.  (Page 547.)

Appeal from Lawrence Circuit Court, Eastern District; *Charles Coffin,* Judge; reversed.

*Kinsworthy & Rhoton, S. D. Campbell* and *James H. Stevenson,* for appellant.

1.  Appellee, having been offered a choice of contracts and having for a consideration elected to take a contract limiting the liability of the carrier, was bound by its terms. Although forbidden on grounds of public policy from contracting against

liability for loss or damage to goods by its own or its servants' negligence, a carrier may, for a consideration, contract against liability as an insurer and against losses from unavoidable accident. 39 Ark. 148; *Id.* 523; 50 Ark. 397; 73 Ark. 112; 46 Ark. 236; 47 Ark. 97; 57 Ark. 112; *Id.* 127; 82 Ark. 353; 81 Ark. 469. The provision for notice in contracts of this nature has frequently been upheld by this court. 63 Ark. 351; 67 Ark. 404; 89 Ark. 454; 90 Ark. 308. The validity of the stipulations of such contracts, when reasonable, and based on valid considerations, is not affected by the Hepburn Act. 89 Ark. 404; 90 Ark. 308. The stipulation in a bill of lading of live stock that the shipper "shall assume all risk, expense of feeding, watering, bedding and otherwise caring for the live stock covered by the contract, while in cars, yards, pens or elsewhere," being based on a reduction of freight rates, is valid and binding. 82 Ark. 469, 475; 56 Ark. 424. If, by reason of the shipper's carelessness, cattle escape from the stock pen of the carrier, he cannot recover. 68 Ark. 218.

2. The first instruction given at appellee's request is erroneous, being in conflict with that part of the contract waiving all former understandings, promises or contracts with or by the appellant, and also in conflict with the stipulation in the contract that the cattle were not to be forwarded by any particular train or any particular time, or in season for any particular market, and that no agent of the company should have authority so to agree. 63 Ark. 443, 447-8.

3. The second and fourth instructions erred in telling the jury that it was appellant's duty to furnish a car without delay. Moreover, there being no evidence of negligence in this respect, there is no evidence on which to base such instructions. The extent of appellant's duty was to forward the cattle within a reasonable time. 63 Ark. 443. Plaintiff's fifth instruction is erroneous, being in direct conflict with the provision of the contract providing that "no agent of this company has any authority to waive, modify or amend any of the provisions of this contract, or to agree to ship said cars by any particular train," etc. Erroneous also because the agreement with Fullenwider, if made, was without consideration and was not binding. It was plainly appellee's duty, in the light of the contract, to search for and re-

cover the strayed cattle, to say nothing of his duty, independent of the contract, to exercise reasonable dilignce to mitigate the damages.    13 Cyc. 71-2, 73, 75; *Id.* 73, 75; 67 Ark. 112.    The proposition that an agreement to do that which one is already bound to do is not a valid consideration needs no citation of authorities: but see 52 Ark. 174; *Id.* 151; 1 Beach on Contracts, § § 157, 165.

*O. C. Blackford,* for appellee.

1.    Both in the admission of evidence and in the instructions of the court to the jury, the latter were correctly allowed to pass upon and determine the question of negligence of appellant and contributory negligence of appellee, giving due consideration to the bill of lading, and not permitting the same to extinguish and make a nullity of the statute providing that carriers shall "furnish sufficient accommodations for the transportation of all such  *  *  *  property as shall, within a reasonable time previous thereto,  *  *  *  be offered for transportation," etc.    Kirby's Digest. § 6592.    See also, *Id.* § 6804.

2.    A common carrier cannot lawfully stipulate for exemption from responsibility when such exemption is not just and reasonable in the eye of the law; and it is not just and reasonable for a common carrier to stipulate for exemption from responsibility for the negligence of itself or its servants.    46 Ark. 241.

3.    While it is true that the contract did not require the carrier to forward the stock in time for any particular market, yet there is implied a contract to ship with reasonable promptness and without unnecessary delay.    82 Ark. 358.

BATTLE, J.    Charles Jones enclosed about thirty head of his cattle in the stock pen of the St. Louis, Iron Mountain & Southern Railway Company at Minturn, Arkansas, for shipment over its railway.    About the 10th day of June, 1908, the cattle escaped from the pen.    After much trouble and some expense he recovered a part of them.    About eleven of them he never recovered.    He brought this action against the railway company to recover the losses sustained by him by reason of their escape.    He alleged in his complaint as follows:

"That on or about the 10th day of June, 1908, plaintiff made arrangements with the station agent of the defendant at Minturn, Arkansas, to set a car at the stock pen, suitable to the

shipping of a carload of cattle. That the defendant, by negligence of its agents and employees in the first instance, unlawfully failed and refused to spot or locate said car within the statutory time or at the proper place for the loading of the cattle. That he, depending upon the defendant to comply with its contract and the provisions of law, procured and gathered together and placed in the stock pen, at said station, a carload of cattle for shipment to E. St. Louis, Ill., consisting of twenty short four-year-old steers, average weight of which was 900 pounds each, six head of cows, average weight of which was 800 pounds each, four three-year-old heifers, average weight 600 pounds each, one two-year-old heifer, weight 500 pounds, and one two-year-old steer, weight 500 pounds. That by the malicious, wanton negligence of the defendant's agents and employees in locating car at the proper place for loading and within the proper time, and by negligently failing to accept and receive for transportation of cattle, the same having remained in the stock pen for fifteen hours, without food or water, after they had been delivered to defendant for transportation, and after the defendant, by its station agent at Minturn, had executed and delivered to plaintiff its bill of lading for same, the cattle became restless and began to try to break out of the stock pen, and about ten o'clock on the night of the 10th day of June, 1908, the cattle remaining in the stock pen by the negligence of the defendant as aforesaid, said cattle became frightened and stampeded by reason of the different trains of the defendant that were passing upon the main line of its road and upon the side track at the station, breaking out of the stock pen and scattering in every direction, some going upon the track and being killed by the trains of the defendant, some being crippled, the number of which that were killed or crippled, the kind of trains or the direction going being to the plaintiff unknown. Plaintiff states that he made an agreement with P. H. Fullenwider, purporting to be the agent of the defendant, subsequent to the time that the cattle escaped from the stock pen as above alleged, that plaintiff should get up all of the thirty-two head of cattle he could find upon the range, and ship them to the same market, and the same commission men that he had originally contemplated, and that the defendant would pay the market

price for every and all of such cattle as plaintiff failed to find, and pay the plaintiff the difference he received on those he could find and ship, and the price they were worth at the time they would have reached the market had plaintiff got proper transportation originally, and for such shrinkage as the cattle that he should find sustained by reason of delay in shipping and to pay plaintiff a reasonable price for his trouble in locating and repenning the cattle; and for such necessary expenses as he might be put to in and about the same. Plaintiff states that he has made diligent search to find all of the cattle, but that he is unable to find any except nine steers, four years old, two three-year-old heifers, and four cows, of the original thirty-two head, which cattle were under the agreement shipped, together with other cattle of plaintiff, on the 23d day of June, 1908.

"That, by reason of the defendant's negligence, plaintiff was compelled to sell the cattle upon the market for a price less than he would have received for the fifteen head of cattle on the date he would have sold them as originally contemplated, in the sum of $51.80, and that the cattle were caused to shrink by reason of the defendant's negligence aforesaid two hundred pounds, to his further damage in the sum of $7, and that he employed help in getting up the fifteen head of cattle and expended therefor the sum of $10, and that he was compelled to hire pasturage for the cattle during the time he was regathering same, and paid therefor the sum of $15, and that since shipping the fifteen head of cattle, he has located one of the cows, one three-year-old heifer and one two-year-old steer, and one two-year-old heifer, and that plaintiff, after making diligent search for all of the cattle as aforesaid, had been unable to find eleven head of the twenty four-year-old steers, as aforesaid, except those that were dead or crippled by the negligence of the defendant's agents and employees, and says as he believes and avers that all of the eleven head of steers were either killed or entirely gone, which were worth to the plaintiff the market price at the time he placed same in defendant's stock pen at Minturn, which was four and a half cents per pound on foot, amounting to $445.50, to his great damage all in the sum of $529.30.

"Wherefore, premises considered, plaintiff prays judgment against the defendant in the sum of $529.30, for costs and all other and proper relief."

The defendant answered, and denied the allegations of the complaint, and alleged that plaintiff's damages, if any, were caused by his own negligence, and that by the terms of the bill of lading executed by it to him it was not liable for the loss sustained by the escape of the cattle from the stock pen.

The plaintiff testified in the trial of the issues as follows: Sometime in June, 1908, he went to Minturn in this State, and made arrangements with the defendant's station agent at that place to furnish him with a car for the shipment of his cattle. He collected his cattle, and drove them to Minturn, and placed them in the defendant's stock pen. There was no means provided for fastening the gate of the stock pen, except a trace chain, but no lock. He purchased a lock and fastened the gate with the chain and lock, keeping the key to the lock. On the 9th of June, 1908, the agent told him that there would be a special train at the station on the next morning about 7:40 o'clock A. M., and the agent wanted him to ship his cattle on that train, but he failed to ship on that train. The agent, then, said that "there will be another train here in a short time, and you can ship on that." In the meantime the agent executed to him a bill of lading for the cattle, which he accepted. Among other things it substantially provides as follows:

"1. That the live stock was not to be transported within any specified time, or delivered at destination at any particular hour, nor in season for any particular market.

"2. That the railway company is exempted from loss or damage arising out of any accident or causes not arising out of its own negligence.

"3. That the shipper assumes all risk and expense of feeding, watering, bedding and otherwise caring for said stock while in the pens or elsewhere, and of loading and unloading same.

"4. That the shipper, by said contract, releases and waives all cause of action for damages that may have accrued to him by any prior written or verbal contract.

"5. That the shipper acknowledges that he has had the option to select this or the unlimited liability contract, and has taken this one because the rate is cheaper.

"6. That no agent of the company has the right to agree

to ship said live stock by any particular train or to reach any particular market, or to furnish cars on any particular day; and that the carrier expressly declines to do this."

About the time the bill of lading was executed the promised train passed without stopping. The agent then said there will be another train here about 5 or 6 o'clock of the evening of the same day, and "it will stop and take your cattle." At the designated time the train arrived, and because his cattle was not already loaded refused to take them and moved on. The agent then said there will be another train here tonight at 11 o'clock, and it has orders to take your cattle. It came between 11 and 12 o'clock that night, but the stock was gone. The gate to the pen was opened, and the chain with which it was fastened was broken. He further testified that he made an agreement with P. H. Fullenwider to the effect stated in his complaint; and that he sustained damages as stated in his complaint. Other witnesses testified, but plaintiff's testimony is most favorable to him.

There was no evidence adduced to show how the cattle escaped from the pen, except through the gate. A part of the evidence tended to show that they were let out by some one. There was no complaint, or evidence to show, that the pen was defective.

Over the objections of the defendant the court instructed the jury as follows:

"1. The jury is instructed that if they believe, from the preponderance of the evidence in this case, that the plaintiff, Charley Jones, had an understanding with the station agent at Minturn that he desired to ship certain live stock to a foreign market, and it was understood between said plaintiff and said agent that a proper car for the shipment of said live stock would be spotted at the proper place for loading on the morning of the 10th day of June, 1908, and on the strength of said understanding the plaintiff gathered together a carload of live stock, had them placed in the stock pen of defendant at Minturn, Ark., and that the agent was negligent, and that said negligence concurred with the negligence of other agents of the defendant, failed and refused to properly place said car for the loading of said live stock at the time agreed upon between the parties, and that (by) the failure on the part of the defendant's agents

aforesaid the plaintiff was not permitted to load said cattle in time to be taken and transported to the market which plaintiff contemplated to place them for sale, and that said failure on the part of defendant's agents aforesaid was the direct and proximate cause of the injury complained of in plaintiff's complaint, then you are authorized to find for the plaintiff in whatever sum you find he was damaged by such failure on the part of the defendant, unless you further find that the plaintiff was negligent, and that his negligence contributed to the injury complained of.

"2. The jury is instructed that it is the duty of the defendant, after accepting personal property for shipment, such as live stock, to transport same without delay, and that any negligence on its part through its agents and employees in the nonperformance of such duty is chargeable to it; and if you believe by a preponderance of the evidence in this case that the agents and employees of the defendant were negligent in furnishing speedy facilities for the transportation of the cattle in question, and that such failure was the direct and proximate cause of the injury complained of in plaintiff's complaint, then you are authorized to find for the plaintiff in such sum as the evidence warrants under the instructions of the court, taken together in this case, unless you find that plaintiff contributed to the said injury by his own negligence.

"4. The jury is instructed that it is the duty of the defendant to provide without delay reasonable facilities of transportation to all shippers at any station who, in the regular and expected course of business, offer their freight for transportation; and if you believe that the defendant was negligent in furnishing the plaintiff a car, properly placing same, in which to ship his cattle, and that such negligence was the direct and proximate cause of the injury, then you should find for the plaintiff, unless you further find that the plaintiff contributed to his injury by his own negligence.

"5. If you find that there was an adjustment agreed upon between the plaintiff, Jones, and Fullenwider, the agent of the defendant company, agreed that the company would pay for all the cattle lost and for the expense of getting up the cattle, and for pasturage, you should find for the plaintiff as to all items

included in such agreement, irrespective of the question of the prior negligence of the company."

The jury returned a verdict in favor of the plaintiff, and the court rendered judgment accordingly. To reverse the judgment defendant prosecutes an appeal to this court.

In the bill of lading executed by the defendant, and signed by both parties, and which is the contract of shipment entered into by them, the plaintiff released and waived all causes of action for damages, if any, that may have accrued to him by any prior written or verbal contract. All previous contracts were merged in the contract evidenced by the bill of lading. This included the agreement by the agent to furnish a car for the shipment of the cattle made prior to the execution of the bill of lading. But the bill of lading did not have the effect to release the appellant of liability for damages already accrued, there being no separate consideration for such release. *St. Louis & San Francisco Railroad Company* v. *Pearce,* 82 Ark. 353, 358.

It was also agreed that the cattle was not to be transported within any specified time, or delivered at destination at any particular hour nor in season for any particular market. This did not however exempt the carrier from the consequences of its or its agent's negligence. While it was not bound according to agreement to transport cattle within any specified time, or to deliver them at destination at any particular time, it was its duty to transport them with all convenient dispatch, with such suitable and sufficient means as it was required to provide in its business, that is to say, in a reasonable time. *St. Louis, I. M. & S. Ry. Co.* v. *Deshong,* 63 Ark. 443; 2 Hutchinson on Carriers (3 ed.), § 651.

From what we have said it follows that instruction numbered 1, copied in this opinion, should not have been given.

The escape of the cattle from the stock pen of appellant was the immediate cause of the greater part of the damages suffered by appellee, if not all. There was no duty of the appellant to furnish cars for their shipment after their escape and before their recovery. Who is responsible for their escape? The contract provides: That the second party (appellee) shall assume all risk and expenses of the feeding; watering, bedding, and otherwise caring for the live stock (cattle) covered by this

contract while in cars, yards, pens, or elsewhere, and shall load and unload the same at his own expense and risk." By this contract appellee assumed all care and risk for the cattle while in the pen, and appellant did not become liable for them until they were loaded on its train. Was it a valid contract? This court has repeatedly held that common carriers cannot contract for exemption from liability from losses and damages happening from the negligence of themselves or their servants—that it is against public policy to permit them to do so. *Taylor, Cleveland & Co.* v. *Little Rock, Mississippi River & Texas Railroad Co.,* 32 Ark. 393, 398; *Taylor* v. *Little Rock, Mississippi River & Texas Railroad Co.,* 39 Ark. 148, 156; *St. Louis, I. M. & S. Ry. Co.* v. *Lesser,* 46 Ark. 236; *Little Rock, Mississippi River & Texas Railway Co.* v. *Talbot,* 47 Ark. 97. And yet, while so holding, it has sustained contracts similar to the one in this case as valid, when based upon a consideration as this is. *St. Louis S. W. Ry. Co.* v. *Butler,* 82 Ark. 469, 475; *St. Louis & S. F. Rd. Co.* v. *Burgin,* 83 Ark. 502; *St. Louis, I. M. & S. Ry. Co.* v. *Weakley,* 50 Ark. 397; *Fordyce* v. *McFlynn,* 56 Ark. 424. Under the rulings of this court such contracts are not stipulations against the negligence of the carrier or its servants.

The contract in this case is for the shipment of cattle from this State to another, and it is said that it is in conflict with the act of Congress known as the Hepburn Act. So much of that act as is applicable to this case is as follows: "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property *caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered* or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed," etc. The act prohibits contracts, receipts, rules or regulations by the carrier against liability for any loss, damage or injury caused by it, its servants and agents, or connecting carriers, and not against consequences of any other causes. The liability of the carrier does not begin until the prop-

erty is delivered, or lawfully tendered for transportation. The carrier and shipper may stipulate as to when the property is delivered before it is placed upon the car or other conveyance for transportation. It is not necessary that the carrier take possession before it is placed upon his car or conveyance for transportation if the shipper desires and does retain control until that time, and such contracts are not against liability for his own acts. If he is willing and does retain control, who has the right to complain or object? In such cases there is no conflict between the shipper and carrier or their rights.

In *St. Louis, Iron Mountain & Southern Railway Company* v. *Ozier,* 86 Ark. 179, 182, it is said: "The delivery or tender of freight to the carrier for shipment may be made in accordance with such arrangement between the parties—that is, between the shipper and carrier's agent—as they may choose to make in regard to the mode of delivery. Says Mr. Hutchinson: 'They make such stipulations upon the subject as they see fit; and when such stiplations are made, they, and not the general law, are to govern.' 1 Hutchinson on Carriers, § 115. A station agent has authority to consent to such arrangements. 1 Hutchinson on Car., § 462."

According to the contract entered into by the parties to this action the appellee assumed the risk and care of the cattle until they were loaded upon the car; and appellant became liable for them after they were loaded.

The contract as to the liability of the appellee for the cattle while in the pen and until loaded did not interfere with or change the duty of appellant to furnish cars for the transportation of the cattle within a reasonable time after a demand therefor, provided such reasonable time did not expire before the escape of the cattle. It would still be liable for damages incurred by appellee by reason of the failure to furnish the car within such reasonable time.

The contract with P. H. Fullenwider was without consideration and not binding on appellant. The principal, if not the sole, inducement to enter into the contract was the undertaking of appellee to collect and ship all of the cattle he could find. If appellant was liable for the losses sustained by the escape of the cattle, it was the duty of appellee to use all rea-

sonable means to arrest and reduce the loss. He could not stand idly by and permit the loss to increase and then hold the appellant liable for the loss which he might have prevented. *Railway Company* v. *Neal,* 56 Ark. 279, 288; *St. Louis, I. M. & S. Ry. Co.* v. *Stroud,* 67 Ark. 112; *St. Louis, I. M. & S. Ry. Co.* v. *Ayres,* 67 Ark. 371; 13 Cyc. pp. 71, 72, 74, 75. He is seeking compensation for doing his legal duty, which is not a sufficient consideration for the agreement with Fullenwider.

The instructions are not in accordance with the law as we find it.

The judgment reversed and cause remanded for a new trial. HART, J., dissents.