ST. LOUIS & S. F. R. CO. v. ZICKAFOOSE.

No. 2686.　Opinion Filed September 23, 1913.

(135 Pac. 406.)

1.　PLEADING—Conclusiveness of Allegations on Pleader.　In an action by a shipper to recover damages of a railroad company, arising out of the injury and loss to an interstate shipment of live stock, where plaintiff asks and obtains leave of court to amend his petition by charging that the defendant executed and issued bills of lading to the shipper for such shipments and that plaintiff is the lawful holder thereof, it cannot afterwards be said that the shipment was made under an oral contract, notwithstanding a subsequent equivocal allegation in the reply filed, charging that the bill of lading was executed after the shipments had been loaded and that said shipping contracts were executed as a receipt and memorandum and to entitle plaintiff to return transportation.

2.　CARRIERS—Liability for Loss of Goods—Interstate Shipment—Connecting Carriers.　A liability for some default in its common-law duty as a common carrier and not a liability as an insurer is what is imposed by the Carmack Amendment of June 29, 1906, c. 3591, sec. 7, 34 St. at L. 593 (U. S. Comp. Stat. Supp. 1911, p. 1307), to Act Feb. 4, 1887, c. 104, sec. 20, 24 St. at L. 386, under which a carrier, receiving property for interstate transportation, is required to issue a bill of lading therefor and is made liable to the holder for "any loss, damage, or injury to such property, caused by it" or by any connecting carrier to whom the property may be delivered.

3.　SAME—Carmack Amendment—Demurrer to Answer.　A stipulation in a shipping contract that the carrier does not undertake to transport live stock within any specific time nor deliver at any particular hour nor in season for any particular market, or that the carrier shall not be responsible for any delay caused by storm, failure of machinery or cars, or from obstructions of track from any cause, or any injury caused by fire from any cause whatever, where set up as a defense in an action by the shipper against the carrier for damages on account of delay, loss, or injury to shipment, not being forbidden by the provisions of the Carmack Amendment of June 29, 1906, c. 3591, sec. 7, 34 St. at L. 593 (U. S. Comp. Stat. Supp. 1911, p. 1307), to Act Feb. 4, 1887, c. 104, sec. 20, 24 St. at L. 386, prohibiting exemptions from liability imposed by that act, does not on its face attempt to cover losses caused by negligence or misconduct of the carrier; hence such defense is not subject to demurrer.

4.　SAME—Limitation of Liability — Negligence — Evidence on the Trial.　If, however, on the trial it should appear that, notwithstanding said stipulation, the failure to reach a particular market or to deliver at a particular time was occasioned by the negligence or acts of omission on the part of the carrier, such carrier would be liable regardless of the provisions of the contract.

5. **SAME—Operation and Effect.** A carrier, though not bound, under the terms of a shipping contract, to transport live stock within any specified time nor deliver the same at destination at any particular hour or for any particular market, must transport the stock with all convenient dispatch and with such suitable and sufficient means as it is 'its duty to provide for its business; that is to say, in a reasonable time.

6. **COMMERCE—Acts of Congress as Superseding State Statute.** On account of the passage of Act Cong. June 29, 1906, c. 3591, 34 St. at L. 584 (U. S. Comp. Stat. Supp. 1911, p. 1284), the state under its police power has ceased to have the authority to pass acts relative to contracts made by carriers pertaining to interstate shipments, and section 9 of article 23 (section 358, Williams' Ann. Ed.) of the Constitution of this state applies only to intrastate shipment (following **Adams Express Co. v. Croninger,** 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. ——).

7. **CARRIERS—Interstate Shipments—Limitation of Liability.** As to interstate shipments, the common-law liability of the carrier for the safe carriage of property may be limited by a special contract with the shipper, where such contract, being supported by a consideration, is reasonable and fairly entered into by the shipper and does not attempt to cover losses caused by the negligence or misconduct of the carrier.

8. **SAME—Carriage of Live Stock.** Under the federal law, which is controlling upon the court in determining questions of liability properly arising out of interstate shipments, a provision in a live-stock contract or bill of lading to the effect that, as a condition precedent to a recovery for any damages for delay, loss, or injury to live stock covered by the contract, the shipper will give notice in writing of the claim therefor to some general officer, or the nearest station agent, or to the agent at destination, or some general officer of the delivering line, before said stock is removed from the point of shipment or the place of destination, and before such stock is mingled with other stock, such notice to be served within one day after the delivery of such stock at destination, was valid. **St. Louis & S. F. R. Co. v. Ladd,** 33 Okla. 160, 124 Pac. 461.

9. **SAME.** The foregoing provisions, covering damages for delay, includes a loss sustained by a decline in the market.

10. **EVIDENCE — Entries in Books of Account — Preliminary Proof.** Entries in books of account may be admitted in evidence, where it is made to appear by the oath of the person who made the entries that such entries are correct and were made at or near the time of the transaction to which they relate or upon proof of the handwriting of the person who made the entries, in case of his death or absence from the county.

(Syllabus by Sharp, C.)

*Error from County Court, Tulsa County;*
*N. J. Gubser, Judge.*

Action by W. J. Zickafoose against the St. Louis & San Francisco Railroad Company. From a judgment in favor of plaintiff, defendant brings error. Reversed and remanded.

*W. F. Evans, R. A. Kleinschmidt,* and *E. H. Foster,* for plaintiff in error.

*Chas. E. Bush* and *John Y. Murry, Jr.,* for defendant in error.

Opinion by SHARP, C. Plaintiff's action is to recover damages sustained to three shipments of hogs and one shipment of cattle transported by defendant company over its line of railroad from Keystone, Okla., to Kansas City, Mo. At the trial it developed that the damages sustained under the first cause of action had been settled by defendant company. In its amended answer the defendant set up the live-stock contracts under which said shipments were made, and among other paragraphs thereof, relied upon as a defense, were the following:

"(4) For the consideration aforesaid, it is expressly agreed that the live stock covered by this contract is not to be transported within any specific time nor delivered at any particular hour nor in season for any particular market; that neither the company nor any connecting carrier shall be responsible for any delay caused by storm, failure of machinery or cars, or from obstructions of track from any cause, or any injury caused by fire from any cause whatever."

"(11) That, as a condition precedent to a recovery for any damages for delay, loss, or injury to live stock covered by this contract, the second party will give notice in writing of the claim therefor to some general officer or the nearest station agent of the first party, or to the agent at destination, or some general officer of the delivering line, before such stock is removed from the point of shipment or from the place of destination, and before such stock is mingled with other stock, such written notification to be served within one day after the delivery of such stock at destination, to the end that such claim shall be fully and fairly investigated; and that a failure to fully comply with the provisions of this clause shall be a bar to the recovery of any and all such claims."

To the paragraphs of the answer, based upon the foregoing provisions of the stock contracts, plaintiff demurred, and the de-

murrer was by the court sustained, and its ruling is here challenged as error. Before passing upon the court's action in sustaining the demurrer to said two paragraphs of the defendant's amended answer, we will note briefly the claim in the brief of defendant in error that the several shipments were made under oral contracts. The record discloses the fact that, at the time the court sustained the above-mentioned demurrer, plaintiff asked and was given leave of court to amend his petition by adding to each cause of action the following: "That the defendant executed and issued a bill of lading to the plaintiff for such shipment, and plaintiff is the lawful holder thereof."

The act of June 29, 1906 (34 St. at L. 593, c. 351, sec. 7), known as the Carmack Amendment to the original interstate commerce act of February 4, 1887 (24 St. at L. 386, c. 104, sec. 20 [U. S. Comp. St. Supp. 1911, p. 1307]), requires any common carrier, railroad, or transportation company, receiving property for transportation from a point in one state to a point in another state, to issue a receipt or bill of lading therefor. The transactions in question, each being interstate shipments, in which the common carrier issued, and the shipper accepted, bills of lading, covering the shipments, and leave being granted plaintiff to amend his petition by declaring upon said written bills of lading or shipping contracts, it sufficiently appears from the petition as amended that the shipments were made pursuant to the terms of the several bills of lading, regardless of the equivocal allegations of plaintiff's reply.

On the part of plaintiff in error it is urged that paragraph 3 of the defendant's amended answer, to which demurrer was sustained, was objectionable for the following reasons: (1) That said provisions were violative of the federal acts regulating interstate commerce; (2) that said provisions undertook to relieve the defendant company of its own acts of negligence; and that paragraph 4 of said answer was objectionable on the ground that it was in violation of article 23, sec. 9, of the Constitution of this state.

We shall first consider the demurrer to the third paragraph of the answer. The twentieth section of the Act of February

4, 1887 (chapter 104, 24 St. at L. 379), as amended by Act of June 29, 1906 (34 St. at L. 584, 595, c. 3591), provides that:

"Any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state, shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by the common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

The inhibition imposed by the latter provision of the act has reference to an attempt to relieve the initial carrier of liability for loss, damage, or injury caused by it or by any connecting carrier to whom the freight is delivered for transportation. By the terms of the act, the liability of the initial carrier is extended so as to include acts occurring on those connecting or forwarding lines over which the property may be transported. *Atlantic Coast Line R. Co. v. Riverside Mills,* 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7.

It was not the purpose of the act to thereby make the initial carrier an outright insurer of the safe delivery of the freight delivered to it for transportation. There must have been some failure to discharge its common-law duty before liability attached. It was not by the terms of the act intended that the initial carrier, or as here the sole carrier, should be liable for unavoidable loss or damage due to forces beyond its control. As was said by Judge Lurton, in speaking for the Supreme Court, in *Adams Express Co. v. Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. ——:

"What is the liability imposed upon the carrier? It is a liability to any holder of the bill of lading which the primary carrier is required to issue 'for any loss, damage or injury to such property caused by it' or by any connecting carrier to whom the goods are delivered. The suggestion that an absolute liability exists for every loss, damage, or injury, from any and

every cause, would be to make such a carrier an absolute insurer and liable for unavoidable loss or damage though due to uncontrollable forces. That this was the intent of Congress is not conceivable. To give such emphasis to the words 'any loss or damage' would be to ignore the qualifying words 'caused by it.' The liability thus imposed is limited to 'any loss, injury, or damage caused by it or a succeeding carrier to whom the property may be delivered' and plainly implies a liability for some default in its common-law duty as a common carrier."

In *Missouri, K. & T. Ry. Co. v. Harriman Bros.*, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. ——, speaking of the same section of the Carmack Amendment, it was said:

"The liability imposed by the statute is the liability imposed by the common law upon a common carrier and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable and does not exempt from loss or responsibility due to negligence."

Upon another branch of the same case it was held that the shipper and carrier of an interstate shipment were not forbidden to stipulate that an action against a carrier in case of damage to the shipment must be brought within 90 days after the damage was sustained, by the provisions of paragraph 20 of the said amendment, prohibiting exemptions from the liability imposed by that act. It has also been held that the shipper and carrier of an interstate shipment are not forbidden to contract to limit the carrier's liability to an agreed value, made to adjust the rate, by the provisions of the Carmack Amendment, prohibiting exemptions from the liability imposed by that act. *Adams Express Co. v. Croninger, supra; Missouri, K. & T. Ry. Co. v. Harriman Bros., supra; Kansas City, S. R. Ry. Co. v. Carl*, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. ——; *Chicago, St. P., M. & O. Ry. Co. v. Latta*, 226 U. S. 519, 33 Sup. Ct. 155, 57 L. Ed. ——; *Chicago, B. & Q. Ry. Co. v. Miller*, 226 U. S. 513, 33 Sup. Ct. 155, 57 L. Ed. ——.

The shipment in question being over the line of the defendant company alone, the act does not change the common-law rule making the carrier liable only in the cases where it has failed in the discharge of some duty. That part of the fourth paragraph of the bill of lading particularly relied upon, and

which provides that the live stock shall not be transported within any particular market, does not therefore offend against the amended section of the interstate commerce act, and for that reason the demurrer was improperly sustained.

Does paragraph 3 of the answer attempt to relieve the defendant from liability on account of its own negligent act? It provides: (1) That it does not undertake to transport the live stock to market within any specified time nor to deliver it at any particular hour nor in season for any particular market; (2) that neither it nor any connecting carrier shall be responsible for any delay caused by storm, failure of machinery or cars, or from obstruction of track from any cause, or any injury caused by fire from any cause whatever. It has repeatedly been held by this court that it is not within the power of a common carrier to relieve itself of liability on account of its own negligence. *Chicago, R. I. & P. Ry. Co. v. Wehrman,* 25 Okla. 147, 105 Pac. 328; *Missouri, K. & T. Ry. Co. v. Hancock,* 26 Okla. 254, 109 Pac. 220. On the other hand, in a number of cases it has been held that the common-law liability of the carrier for the safe carriage of property may be limited by a special contract with a shipper, where such contract is supported by a consideration, is reasonable and fairly entered into by the shipper and does not attempt to cover losses caused by the negligence or misconduct of the carrier. *Chicago, R. I. & P. Ry. Co. v. Spears,* 31 Okla. 469, 122 Pac. 228; *Missouri, K. & T. Ry. Co. v. Hancock & Goodbar,* 26 Okla. 265, 109 Pac. 223.

"If," as was said by this court in *St. Louis & S. F. R. Co. v. Bilby,* 35 Okla. 589, 130 Pac. 1089, "the failure to deliver within a reasonable time, so as to reach a particular market, is occasioned by the negligence or acts of omission on the part of the carrier, it is liable regardless of any contract to the contrary. The carrier is liable for delay occasioned by failure of engines, cars, machinery, obstructions of the track, or for any cause whatever, where such intervening cause results from the negligence or act of omission on the part of the carrier."

By this contract, however, it was not bound to transport the shipment within any specified time or to deliver at any particular hour or in season for any particular market. If, in the discharge of its duty to plaintiff, defendant was negligent, it must follow that it would be liable for all damages approximately flowing from such negligent acts. But it cannot be said, because defendant has fairly sought to limit its common-law liability, without attempting to relieve itself of any acts of negligence or misconduct, that therefore the objectionable stipulation is void as a matter of law. If, as has already been observed, upon a trial it should be made to appear that plaintiff sustained injury and loss on account of defendant's negligence, the latter could not defend on the ground that the shipping contract contained a provision relieving it of liability.

It was the duty of the carrier, after the live stock was received and loaded according to agreement, to transport them with all convenient dispatch with such suitable and sufficient means as it was required to provide in its business; that is to say, in a reasonable time. Hutchinson on Carriers, sec. 651; Elliott on Railroads, sec. 1555; Thompson on Negligence, sec. 6601; *St. Louis, I. M. & S. Ry. Co. v. Jones,* 93 Ark. 537, 125 S. W. 1025, 137 Am. St. Rep. 99; *Cleveland, C., C. & St. L. Ry. Co. v. Heath,* 22 Ind. App. 47, 53 N. E. 198; *Cincinnati, I., St. L. & C. Ry. Co. v. Case,* 122 Ind. 310, 23 N. E. 797; *Vicksburg & M. R. Co. v. Ragsdale,* 46 Miss. 458.

Passing to the question of the action of the court in sustaining the demurrer to the fourth paragraph of defendant's answer, we find authority, both of this court and of the Supreme Court of the United States, construing and sustaining like and similar contracts. *St. Louis & S. F. R. Co. v. Phillips,* 17 Okla. 264, 87 Pac. 470; *St. Louis & S. F. R. Co. v. Cake,* 25 Okla. 227, 105 Pac. 322; *St. Louis & S. F. R. Co. v. Ladd,* 33 Okla. 160, 124 Pac. 461; *St. Louis & S. F. R. Co. v. Bilby,* 35 Okla. 589, 130 Pac. 1089; *Missouri, K. & T. Ry. Co. v. Walston,* 37 Okla. 517, 133 Pac. 42; *Adams Express Co. v. Croninger, supra; Kansas City S. Ry. Co. v. Carl,* 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. ——; *Missouri, K. & T. Ry. Co. v. Harriman Bros.,*

227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. ——.    Section 11 of the shipping contract, being the section pleaded as a defense in the fourth paragraph of defendant's answer, is identical with the section construed by this court in *St. Louis & S. F. R. Co. v. Phillips, supra, St. Louis & S. F. R. Co. v. Cake, supra, St. Louis & S. F. R. Co. v. Ladd, supra,* and identical in its meaning with one of the provisions of the contract before the court in *St. Louis & S. F. R. Co. v. Bilby, supra.*    In the first three of the latter mentioned cases, as well as a large number of other cases cited by Justice Williams in the Bilby case, the contracts of shipment were entered into prior to the admission of Oklahoma into the sisterhood of states.    The decisions of the Supreme Court of the United States were controlling in the construction of said contracts and were followed by this court in deciding said cases.    Some of these decisions are *York Manufacturing Co. v. Illinois Central R. Co.,* 3 Wall. 107, 18 L. Ed. 170; *Hart v. Pennsylvania R. Co.,* 112 U. S. 331, 341, 5 Sup. Ct. 151, 28 L. Ed. 717; *Southern Express Co. v. Caldwell,* 88 U. S. (21 Wall.) 264, 22 L. Ed. 556; *Bank of Kentucky v. Adams Express Co.,* 93 U. S. 174, 23 L. Ed. 872.

It was held in the Bilby case, *supra,* that as to cases arising in Oklahoma since the erection of the state, where the contracts relate to interstate shipments, the same authority governs.    That on account of the passage of the Act of Congress of June 29, 1906 (chapter 3591, 34 St. at L. 584), and of the acts amendatory thereof, the state, under its police power, has ceased to have the authority to pass acts relative to contracts made by carriers, pertaining to interstate shipments, and section 9 of article 23 (section 358, Williams' Ann. Ed.) of the Constitution of this state applies only to intrastate shipments.

The provision of the shipping contract made it a condition precedent to a recovery for any damages for delay, loss, or injury to live stock covered by the contract that the notice therein mentioned should be given.    This differs from provisions in many of the contracts requiring that notice be given before any recovery can be had for "loss or injury to the shipment."    *Missouri, K. & T. Ry. Co. v. Fry,* 74 Kan. 546, 87

Pac. 754; *Cornelius v. Atchison, T. & S. F. Ry. Co.,* 74 Kan. 599, 87 Pac. 751; *Atchison, T. & S. F. Ry. Co. v. Poole,* 73 Kan. 466, 87 Pac. 465; *Kramer & Co. v. Chicago, M. & St. P. Ry. Co.,* 101 Iowa, 178, 70 N. W. 119; *Libby v. St. Louis, I. M. & S. R. Co.,* 137 Mo. App. 276, 117 S. W. 659; *Wright v. Chicago, B. & Q. R. Co.,* 118 Mo. App. 392, 94 S. W. 555.

The provision requiring notice in the present case is not confined to loss or injury to live stock covered by the contract, but as well for any damages for delay, and therefore includes a loss sustained by a decline in the market.

If for any reason the provision of the contract should not be enforced by appropriate pleadings, that issue should have been tendered. If deceit or fraud was practiced upon the shipper by the agent of the railroad company in obtaining his assent to the agreement, or if notice was given by the shipper, or if waived by the railroad company, or if by the act of the latter such notice could not reasonably have been given, or if other valid excuse there be why the provision of the contract should not be enforced, in either event such fact should have been pleaded and proved. The due execution of the shipping contracts was admitted by the demurrer to the amended answer. The demurrer being sustained, these defenses were withdrawn from further consideration at the trial.

In the event of another trial in this case, attention is called to section 5907, Comp. Laws 1909 (section 5114, Rev. Laws 1910), providing that entries in books of account may be admitted in evidence when it is made to appear by the oath of the person who made the entries that such entries are correct and were made at or near the time of the transaction to which they relate or upon proof of the handwriting of the person who made the entries, in case of his death or absence from the county. This section of the statute has been construed by the court in *First Nat. Bank of Enid v. Yeoman,* 14 Okla. 626, 78 Pac. 388; *Missouri, K. & T. Ry. Co. v. Davis,* 24 Okla. 677, 104 Pac. 34, 24 L. R. A. (N. S.) 866; *Missouri, K. & T. Ry. Co. v. Walker,* 27 Okla. 849, 113 Pac. 907; *Pacific Mutual Life Insurance Co. v. O'Neil,* 36 Okla. 792, 130 Pac. 270; *Muskogee*

*Electric Traction Co. v. McIntire,* 37 Okla. 684, 133 Pac. 213. By this statute the competency of the testimony pertaining to the entries in the books of account, testified to by the witnesses Cooper, Monohan, Smith, and Flaherty, is to be determined.

The judgment of the trial court should be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.